## POOLE v. TERMINIX CO. OF MARY-LAND & WASHINGTON, Inc. et al.
### No. 1109.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 5, 1951.

Decided Nov. 30, 1951.

Dickson R. Loos, Washington, D. C., with whom Preston C. King, Jr., Washington, D. C., was on the brief, for appellant.

Thomas B. Heffelfinger, Washington, D. C., for appellee Terminix Co.

Bernard J. Gallagher, Washington, D. C., with whom J. Roy Thompson, Jr., Washington, D. C., was on the brief, for appellee Fidelity & Casualty Co.

Before CAYTON, Chief Judge, HOOD, Associate Judge, and MYERS, Associate Judge of the Municipal Court for the District of Columbia.[1]

MYERS, Acting Associate Judge.

This appeal is from a finding in favor of the defendants at the conclusion of the plaintiff's evidence because the action was barred by the statute of limitations. The complaint alleged that the defendants, Terminix Company and E. L. Bruce Company (which was never served), by written contract dated January 8, 1943, undertook to insulate the house of one F. A. Tweed in Chevy Chase, Maryland, against the attacks of termites. On January 20, 1943, Terminix made initial applications of insulating materials. In May 1943 the house was sold to the plaintiff, Charles W. Poole. Subsequently, due to the continued presence of termites, the defendant made periodic inspection trips to the premises to re-apply the insulating materials. In the process of these applications on or about April 15, 1946, the defendant through its agents drilled and bored holes in the floor of the cellar. Plaintiff alleged that, in the drilling of these holes, a tile drainage system beneath the floor was damaged, thereby allowing water to seep through and flood the cellar. It was alleged that the plaintiff did not discover until 1949 that the cause of this seepage was damage to the tile drainage system due to the careless work

1. Sitting by designation, pursuant to the provisions of Code 1940, Supp. VII, § 11–771.

of defendant's agents. The complaint sought damages in the amount of $2,000.

Defendant, Terminix Company, was allowed to bring in the Fidelity and Casualty Company of New York, a corporation, as third-party defendant on the ground that the latter, by virtue of a policy of insurance issued to the defendant on January 8, 1946, promised to pay all sums which the defendant should become obligated to pay the plaintiff for damages due to injury or destruction of the property as charged in the complaint.

On this appeal plaintiff predicates his claim solely upon "a breach of implied warranty of a written contract" and asserts that his right of action did not accrue until he discovered in 1948 or 1949 that the cause of the wetness in his cellar was due to failure by defendant to do its insulating work properly.

The trial judge ruled that on the plaintiff's own testimony his action filed July 18, 1949 was barred by the three-year statute of limitations.[2] At the same time, he also granted the third-party defendant's motion for a finding in its favor. The record is not too clear as to his basis for that action. But in view of our decision as to the judgment in favor of the principal defendant Terminix, this is of no importance.

The decisive question on this appeal is whether or not the statute of limitations started to run on April 15, 1946 when the alleged breach of implied warranty to do the insulating work in a proper manner occurred. The plaintiff testified that in April 1949 he noticed a considerable amount of water in his basement and that water was bubbling out through a crack in front of the cellar window as though there were an artesian well. He had the hole broken open and a long crack was found with a piece of terra cotta pipe running off at an angle. There was a hole in the terra cotta pipe, and the water was coming out of the hole at that spot. He further testified that before the drilling by the Terminix Company in 1946 his basement had been dry.

He also identified the holes that had been drilled twelve to fourteen inches apart around the perimeter of the basement at that time.

We are concerned here not so much with the exact date that the appellant discovered that the cause of the dampness in his cellar was due to the careless work of the defendant company under its insulation agreement as we are with the question—does the statute of limitations begin to run from the breach of an implied warranty or from the discovery of the breach of that warranty? Ordinarily, the statute of limitations in contract cases begins to run from the breach of the agreement. Statutes of limitation are frequently denominated statutes of repose but they do not protect any person who has perpetrated a fraud so that the breach does not come to the attention of the injured party until a later date. The cases seem clear that where fraud is involved, limitations do not start to run until there has been a discovery of the breach of implied warranty, or from the time when, by the exercise of reasonable diligence, the fraud could have been discovered.[3]

There is no contention that fraud is involved in the present case. The alleged breach of implied warranty lies in the unworkmanlike insulating activities of the defendant on April 15, 1946 when holes were drilled around the perimeter of the appellant's cellar. Appellant claimed that he did not discover the damage of those drillings to his tile drainage system until 1948 or 1949 because the holes were filled by defendant and the dampness did not appear until the latter years.

It is not necessary for this court to pass on the correctness of the trial judge's finding as to when the dampness was first noted in the cellar if we determine that the right of action accrued to the appellant in April 1946 and therefore was barred in July 1949 when this suit was filed. The law in this jurisdiction was very recently stated in the case of Zellan v. Cole, 87 U.S.App.

2. Code 1940, § 12–201.

3. Kraft v. Lowe, D.C.Mun.App., 77 A.2d 554.

D.C. 9, 183 F.2d 139, 140, as follows: "It is clear from these facts that the parties took the contract to be a promise to maintain a dry basement. Under this construction, the statute of limitations began to run when the contractor abandoned his efforts. * * * The view of this court is that *the statute began to run when the contract * * * was breached."* (Italics supplied.) The dissenting opinion of Chief Judge Stephens held "that the time within which they must sue would commence to run immediately upon their discovery of a breach".

If legal injury was a natural consequence of the defendant's act, no matter how slight the damage, in the absence of fraud, limitations will start to run from the time that wrongful act was committed and even before ascertainment of the damages can be had. Mere want of knowledge by the owner of injury to his property does not prevent the running of the statute. Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36 (in providing for water-pipe, arch support of house was undermined); New Amsterdam Casualty Co. v. Baker, D.C.D.Md., 74 F.Supp. 809 (suit by subrogee for reimbursement of damages due to breach of warranty of faulty dress material which caught fire and burned purchaser). To that same effect are Wilcox v. Plummer, 4 Pet. 172, 20 U.S. 172, 7 L.Ed. 821; Amy v. Dubuque, 98 U.S. 470, 25 L.Ed. 228; Liberty Mut. Ins. Co. v. Sheila-Lynn, Inc., 185 Misc. 689, 57 N.Y. S.2d 707, affirmed 270 App.Div. 835, 61 N. Y.S.2d 373 (in suit on implied warranty, limitations begin to run at the time of the sale); John S. Sills & Sons v. Bridgeton Condensed Milk Co., 3 Cir., 43 F.2d 72 (limitations began from breach of warranty in sale of condensed milk when the milk became defective); Aachen & Munich Fire Ins. Co. v. Morton, 6 Cir., 156 F. 654, 15 L.R.A.,N.S., 156 (limitations run from wrongful assignment of contract); Pickett v. Aglinsky, 4 Cir., 110 F.2d 628 (limitation as to malpractice claim runs from time that wrong is committed).

There appears to be a distinction made by some courts between a warranty as to kind or quality, which is broken when made, where the statutory period is computed from the date of the sale, and a warranty relating to a future event when its truth can be ascertained, which warranty is not broken until the future event happens. Ingalls v. Angell, 76 Wash. 692, 137 P. 309; J. Kennard & Sons Carpet Co. v. Dornan, 64 Mo.App. 17.

Appellant relies upon the case of Sheehy Co. v. Eastern Importing & Mfg. Co., 44 App.D.C. 107 L.R.A. 1916F, 810, but this case was based upon constructive fraud in the concealment by the wholesaler of the defective condition of sardines in cans, because the court said, "Statutes of limitation were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights had never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by commiting a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And there is no reason why this principle should not be applicable to suits on the law side of the court as to those on the equity side." The sale there was made in August 1911, the defective condition was discovered in March 1912, and suit was filed for the breach of the warranty of the merchantability of the goods in November 1914.[4]

We think under the ruling in the Zellan case, supra, that in the absence of fraud, actual or constructive, the statute of limitations begins to run at the time of the breach of the implied warranty. Certainly, were the present claim founded in tort, there could be no doubt that the limitations would start at the time of the commission of the negligent acts pro-

4. A somewhat analogous case is Lewey v. H. C. Frick Coke Co., 166 Pa. 536, 31 A. 261, 28 L.R.A. 283.

ducing the injury. The statute of limitations in this jurisdiction is the same for tort as for breach of contract—three years. Here where the implied warranty was breached by alleged careless and negligent work done by the defendant company, it would seem fairer by analogy that the limitations on the right to recover damages for such work should start from the time that the work was carelessly done in April 1946.

■ The present case involves no breach of warranty as to the condition or quality of goods sold by defendant as to either its present or prospective state, but deals wholly with whether or not the action of defendant company in drilling holes in appellant's cellar in April 1946 to inject insulating material was done in a workmanlike manner. There is no evidence of concealment by the defendant company of the work that it performed in 1946. It did fill in the holes that it had bored in the cellar floor. This was necessary to complete the insulating work. Concealment by mere silence is not enough. There must be some trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action by the use of ordinary diligence. No such charge is made against the defendant here, or disclosed by the record. Appellant testified that he did not discover that his cellar was damp due to the careless drilling of the holes in the floor until 1948 or 1949. In ordinary course, it could be reasonably anticipated that any damage, if due to the alleged negligent performance of the insulating contract would have been revealed or discovered within three years.

■ Having determined that the statute of limitations ran from the time of the breach of the implied warranty to do the insulating work in a workmanlike manner and such breach having occurred in April 1946, appellant's right of action is barred because filed more than three years thereafter.

Affirmed.