**WILLIAM J. DAVIS, INC., Appellant,**

v.

**William YOUNG, Appellee.**

**No. 12363.**

District of Columbia Court of Appeals.

Submitted Sept. 20, 1978.

Decided March 19, 1980.

---

Stephen O. Hessler, Washington, D. C., was on the brief for appellant.

Ellen M. Scully, Washington, D. C., was on the brief for appellee.

Before KERN, HARRIS and MACK, Associate Judges.

MACK, Associate Judge:

█ We are asked to find that the trial court erred in denying appellant's motions for partial summary judgment. Appellant corporation alleges that a portion of appellee's minimum wage claim is barred by the statute of limitations.[1] It also suggests that a claim for 1972 wages is barred, under the principle of res judicata, by an earlier determination of the Minimum Wage Board. We disagree and accordingly affirm.[2]

The claim arose under the District of Columbia's Minimum Wage Act of 1966.[3] In January 1972, appellant William J. Davis, Inc. (Davis, Inc.) hired Mr. Young, appellee, as a janitor/resident manager for four apartment buildings. The agreed upon biweekly salary was $128.50 for 80 hours of work. After the first full pay period, Mr. Young ceased reporting the number of hours he worked. Rather, when he picked up his paycheck at appellant's main office, he signed a blank statement later filed in by Davis, Inc. for the hours worked. Upon commencement of this procedure, the payroll clerk assured him that his signature was needed only to prove he had picked up his check; that the time sheet was used only for her records; that he need not record his hours. It is uncontested that Mr. Young was to be paid by the hour. Young testified that he worked the same number of hours per pay period (80) for the entire time he was employed. Throughout his employment, he received a record (pay stub) attached to his paycheck indicating, *inter alia*, the number of hours included in the pay period. However, he testified that he never looked at that figure. He only checked the total amount of take-home pay to verify that it was correct —$107.46.

On June 13, 1972, the minimum wage for a janitor/resident manager increased from $1.60 to $2.25 per hour. Mr. Young's wages were not increased. Starting with the next pay period (June 18, 1972) Davis, Inc. reduced on its records and on Young's pay stub the number of hours worked from 80 to 64. Davis, Inc. further reduced appellee's hours to 57 beginning with the pay period ending August 12, 1972.[4] Mr.

---

1. D.C.Code 1973, § 36–416 states:
   Any action commenced on or after the effective date of the District of Columbia Minimum Wage Amendments Act of 1966 to enforce any cause of action for unpaid wages or liquidated damages under this subchapter or any order or regulation issued thereunder may be commenced within three years after the cause of action accrued, and every such action shall be forever barred unless commenced within three years after the cause of action accrued.

2. Appellant also raised issues not objected to at trial: a violation of the parol evidence rule and submission of the issue of liquidated damages to the jury. Absent a clear miscarriage of justice, matters not raised at trial in civil litigation may not be raised for the first time on appeal. *Hormel v. Helvering*, 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–722, 85 L.Ed. 1037 (1941); *Order of AHEPA v. Travel Consultants, Inc.*, D.C.App., 367 A.2d 119, 126 (1976); *Miller v. Avirom*, 127 U.S.App.D.C. 367, 384 F.2d 319 (1967).

3. D.C.Code 1973, § 36–401 *et seq.*, and as amended by D.C.Code 1978 Supp., § 36–401 *et seq.*

4. Under the new minimum wage of $2.25 per hour for a fulltime employee, if Mr. Young worked 64 hours per pay period, Davis, Inc.

Young's net pay check and gross pay remained exactly the same. He was never informed that either his hours or job duties had been reduced. Nor was Mr. Young informed of the new minimum wage order. It was not posted at the site of Young's employment.[5] Although Davis, Inc. posted a copy near the time clock at its headquarters, there is no indication that Young was ever in a position to see the order. He did not use the time clock; he only went to the office to get paid; he picked up his check from a person located in a different part of the office. In fact, he testified that he never saw the notice. The record does not indicate the date when Mr. Young first learned of the June 1972 increase in the minimum wage and the corresponding decrease in the number of hours for which he was paid.

In July 1973, Mr. Young's paycheck was increased to $133.95 gross ($110.91 net), still for 57 hours of work. This was evidently in response to the fact that Mr. Young, at 57 hours per pay period, qualified only as a part-time employee. The hourly rate for a part-time employee was $2.35.[6] Shortly before this increase, in May 1973, the Minimum Wage Board, following an investigation, had determined that Davis, Inc. owed Mr. Young an additional $8.95 per pay period in minimum wages for the July—December 1972 period. In response, Davis, Inc. paid him $98.45 in August 1973. The Minimum Wage Computation Sheet indicates that the additional pay was based on 57 hours per pay period.[7] In December 1973, Mr. Young was fired.

On September 15, 1975, Mr. Young filed suit under the Minimum Wage Act.[8] He requested payment for the additional 23 hours per pay period he had worked and for which he had not been paid. In addition he requested liquidated damages. Shortly before trial, Davis, Inc. made the two motions for partial summary judgment at issue here. The trial judge ruled that the statute of limitations did not commence running until December of 1973 when Mr. Young was fired; that the Minimum Wage Board determination was not entitled to res judicata effect. A jury found that Mr. Young had worked 80 hours per pay period throughout his employment. It returned a verdict for $1,992.70[9] in unpaid wages, and

would have owed him $144.00. If he only worked 57 hours, $128.25 would be due. Mr. Young's counsel argued at trial that these adjustments in the number of hours worked, at a time when the new wage order became effective, were designed to avoid paying Mr. Young the minimum wage for the full 80 hours he worked.

5. D.C.Code 1973, § 36–412 specifies:
   Every employer subject to any provision of this subchapter or of any regulation or order issued under this subchapter shall keep a copy or summary of this subchapter and of any applicable wage order and regulation issued thereunder, in a form prescribed or approved by the Commissioner, posted in a conspicuous and accessible place in or about the premises wherein any employee covered by such regulation or order is employed. . .

6. Fifty-seven hours at $2.35 per hour equals $133.95.

7. The only evidence in the record regarding this matter is the Computation Sheet, filled in by hand. It erroneously indicates that Mr. Young worked 57 hours for the July 25 and August 8, 1972 payrolls even though the pay stubs attached to the checks for those dates show 64 hours worked. There is nothing in the record indicating the source of the Board's information.

8. D.C.Code 1973, § 36–415(a) states in relevant part:
   Any employer who pays any employee less than the wage to which such employee is entitled under this subchapter or any order or regulation issued thereunder, shall be liable to such employee in the amount of such unpaid wages, and in an additional equal amount as liquidated damages, except that if, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of this subchapter, the court may, in its sound discretion, award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section.

9. The parties stipulated that this was the amount due if the jury found that Mr. Young had worked 80 hours.

liquidated damages of an equal amount. This appeal followed.

## I.

The precise question posed by appellant's statute of limitations argument is whether Mr. Young's cause of action for unpaid minimum wages accrued each pay period beginning in June 1972 when the minimum wage order became effective, or instead accrued at a later time when he discovered, or should have discovered, the nonpayment.[10]

Under general principles developed in interpreting statutes of limitations, a cause of action for compensation accrues as soon as it is due. In cases of periodic payment, such as wages, each payment date gives rise to a new claim.[11] *See, e. g., Friedman v. United States*, 310 F.2d 381 (Ct.Cl.1962); *Mitchell v. Lancaster Milk Co.*, 185 F.Supp. 66 (M.D.Pa.1960) (interpreting the Fair Labor Standards Act after which the D.C. Act is modeled). Applying these general principles, Mr. Young would have a cause of action for each pay period, beginning in June 1972, for which he was not paid the minimum wage for the 80 hours worked. Since Mr. Young filed suit on September 15, 1975, all claims occurring prior to September 15, 1972 would be barred by the three year statute of limitations, absent some basis for exception. *Namerdy v. Generalcar*, D.C.App., 217 A.2d 109 (1966); *Washington Loan & Trust Co. v. Darling*, 21 App.D.C. 132 (1903). We find grounds for applying an exception here.

Where the basis of a cause of action is fraudulently concealed from a plaintiff, courts have created an exception to this usual rule. *See, e. g., King v. Kitchen Magic, Inc.*, D.C.App., 391 A.2d 1184, 1186 (1978) (fraud); *Weisberg v. Williams, Connolly & Califano*, D.C.App., 390 A.2d 992 (1978) (legal malpractice); *P. H. Sheehy Co. v. Eastern Importing & Manufacturing Co.*, 44 App.D.C. 107 (1915) (breach of warranty). In such a circumstance, accrual of the cause of action is suspended. The statute will not commence to run until the plaintiff discovers or has a reasonable opportunity to discover the wrong. *Holmburg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *International Ladies' Garment Workers Union v. NLRB*, 150 U.S.App.D.C. 71, 463 F.2d 907 (1972); *Maddox v. Andy's Refrigeration & Motor Service Co.*, D.C. Mun.App., 160 A.2d 799 (1960). Generally the defendant must have done something of an affirmative nature designed to prevent discovery of the cause of action. *Searl v.*

---

**10.** In posing this issue, appellant also argues that denial of summary judgment was improper because appellee's opposition was unsupported by affidavits or other documents. This ignores the fact that an award of summary judgment is improper where there is even a doubt as to whether an issue of fact exists. *Int'l Bhd. of Painters and Allied Trades v. Hartford Accident & Indem. Co.*, D.C.App., 388 A.2d 36, 42 (1978). We read the pleadings on this motion not only as showing disagreement as to the factual issues, but also as raising a question about whether Davis, Inc. would be entitled to judgment as a matter of law. The trial court's denial of the motion was thus proper.

**11.** At trial, counsel for Mr. Young argued that this cause of action was for a "continuing violation" as in *L'Enfant Plaza East, Inc. v. John McShain, Inc.*, D.C.App., 359 A.2d 5 (1976). Although technically correct, we think analyzing wage claims in this manner confuses the issue. In *L'Enfant Plaza*, the plaintiff's trespass cause of action was for a concealed (buried) encroachment which occurred more than three years prior to suit. The single act of trespass was viewed as continuing until the encroachment was removed, giving rise to a single cause of action. In contrast, in situations involving wage violations, a new cause of action arises with each pay period. This is so despite the fact that the actual event triggering the cause of action occurred only once. Some courts have also labeled wage violations "continuing." *See Macklin v. Spector Freight Sys., Inc.*, 156 U.S.App.D.C. 69, 84–86 n. 30, 478 F.2d 979, 994–96 n. 30 (1973); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973); *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971); *Friedman v. United States, supra* at 384. This appellation is confusing because in wage cases, one continuing violation potentially gives rise to many causes of action, while in tort cases, one continuing violation covers only one cause of action. We prefer to analyze the situation in terms of its effect, *i. e.* of suspending the accrual of the causes of action. This focuses attention, as it properly should, on the event which restarts the statute of limitations clock.

*Earll*, 95 U.S.App.D.C. 151, 221 F.2d 24 (1954). Although mere silence, failure to disclose, or ignorance of facts establishing a claim [12] may not ordinarily constitute fraudulent concealment for these purposes, any statement, word or act which tends to suppress the truth raises the suppression to that level. *Jackson v. Combs*, 18 D.C. (7 Mackey) 608 (1888). In such instances, the defendant's affirmative efforts to divert or prevent discovery of the original fraud give a continuing character to the original act which deprives it of statute of limitations protection until discovery. *See* note 11, *supra.*

The statute of limitations with which we are concerned here is part of a remedial statute enacted by Congress to protect the wage-earners at the bottom of the economic ladder. Congress concluded that "[e]mployment of persons at these insufficient rates of pay threatens the health and well-being of the people of the District of Columbia and injures the overall economy." D.C. Code 1973, § 36–401(a). Patterned after the Fair Labor Standards Act (FLSA),[13] *see Williams v. W. M. A. Transit Co.*, 153 U.S. App.D.C. 183, 472 F.2d 1258 (1972), the D.C. Minimum Wage Act is designed to insure that these workers receive a legislatively determined minimum wage. The ordinary bargained-for employment contract has been replaced by this statutory mandate. To insure that the protected workers are informed of their rights, the Act requires employers to post the applicable minimum wage laws and regulations at places of employment. D.C.Code 1973, § 36–412, note 5 *supra.*

These policies of the act strongly suggest that the common law exception for fraudulent concealment be applied, to effect its remedial purposes.[14] We find reliable authority for this proposition in caselaw interpreting other federal statutes of limitations. "Read into every federal statute of limitations, . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans*, 180 U.S.App.D.C. 75, 83, 553 F.2d 220, 228 (1977) *citing Holmberg v. Armbrecht, supra.*

In our view § 36–416 must be read in light of the equitable doctrine described in *Fitzgerald v. Seamans, supra.* It would be anomalous indeed to interpret the Minimum Wage Act, which relies so heavily for effective enforcement on employer notification of its requirements, as absolving from liability those employers who fail to do so and who underpay their employees for more than three years. We hold that, where as here there are affirmative facts raising the spectre of an employer's fraudulent concealment, the three-year statutory period of limitations for bringing an action for unpaid minimum wages begins to run when an employee discovers, or reasonably should have discovered, the factual basis of the claim.

We think the facts of this case present a compelling basis for reaching this conclusion. The actions of Davis, Inc. served to lull Mr. Young into inaction.[15] The appellant was dealing with an unsophisticated employee. Mr. Young was told

---

12. *Baker v. F & F Inv.*, 420 F.2d 1191 (7th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970) (ignorance); *Searl v. Earll, supra* (duty to speak); *Adrian v. American Security & Trust Co.*, D.C.App., 211 A.2d 771 (1965) (silence); *Maddox v. Andy's Refrigeration & Motor Service Co.*, D.C.Mun.App., 160 A.2d 799 (1960) (lack of knowledge); *Poole v. Terminix Co. of Maryland & Washington*, D.C. Mun.App., 84 A.2d 699 (1951) (silence).

13. 29 U.S.C. § 201 *et seq.* (1976).

14. *McCloskey & Co. v. Dickinson*, D.C.Mun. App., 56 A.2d 442 (1948) (FLSA to be liberally construed in light of its remedial purposes); *United States v. Darby*, 312 U.S. 100 (1941).

15. In one of the seminal statute of limitations cases in this jurisdiction, it was held that "a defendant cannot avail himself of the bar of the statute of limitation, if it appears that he has done anything that would tend to *lull* the plaintiff into inaction . . . ." *Hornblower v. George Washington Univ.*, 31 App.D.C. 64, 75 (1908) (emphasis added).

to work 80 hours per pay period. He was never told to reduce either his hours or duties. He was told it was not necessary to report his hours biweekly. He was not informed of the minimum wage increase, either by a notice at his workplace, or any other means designed to notify him. Throughout most of his employment, until July 1973, his gross wages remained exactly the same, despite the fact that the recorded hours worked changed from 80, to 64, to 57. His take home pay likewise remained the same with the exception of an 84 cents reduction in January 1973 brought about by increased social security withholdings. These efforts demonstrate an intent by Davis, Inc. to avoid compliance with the minimum wage order and conceal its actions from appellee.

Our conclusion is reinforced by the fact that the jury, in awarding liquidated damages, also concluded that Davis, Inc.'s actions were not taken in good faith. Although the pay stub attached to Mr. Young's check, had he examined it, revealed the reduction in the actual number of hours for which he was paid, this did not serve as constructive notice to him. Since his gross and take home pay remained the same, there was no reason to closely scrutinize the stub. These positive steps Davis, Inc. took to lull Mr. Young and to conceal from him a change in the minimum wage served to obviate any argument that he had constructive notice.

We hold that Mr. Young's cause of action for unpaid minimum wages did not accrue until he discovered, or reasonably should have discovered, facts indicating that such a claim existed.[16] The task remains to determine on what date Mr. Young's cause of actions accrued. On the record here it is not entirely clear when Mr. Young actually became aware of his claim. We think the earliest date he could reasonably have become aware of it was when his gross and net pay increased without explanation in July 1973, and he received the check in August 1973 for underpaid minimum wages due on the reported 57 hours. There is also some evidence to suggest that he may not have actually known until he was fired in December 1973, the date used by the trial court. Using any of these dates, the filing of the suit on September 15, 1975 was well within the three-year statute of limitations.

## II.

Appellant also asserts that the Minimum Wage Board determination that Davis, Inc. owed appellee $98.45 for the year 1972 served to operate as res judicata for all claims for that year.[17] The record is very skimpy regarding the Minimum Wage Board determination. We do not know who, if anyone, requested the investigation. All that is shown is the fact that an investigation was made in May 1973. There is nothing to indicate the basis of the determination. There is no evidence that a hearing was held on the matter or that Mr. Young was consulted. The only evidence before the court was the handwritten Computation Sheet tallying the amount due based on 57 hours worked. This is not a record supportive of invoking the doctrine of res judicata.

Traditionally the doctrine of res judicata or its subpart collateral estoppel[18]

---

**16.** This is in accord with a similar rule we recently adopted for medical malpractice cases. *Burns v. Bell*, D.C.App., 409 A.2d 614 (1979).

**17.** For the first time on appeal in support of its motion, appellant raises the legal theories of accord and satisfaction and waiver, in addition to the doctrine of res judicata. Davis, Inc. argues that by accepting payment, Mr. Young waived his right to bring the instant action for the 1972 claims. D.C.Code 1973, § 36–415(c) specifies in part that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under sub-

section (a) of this section to such unpaid wages and an additional equal amount as liquidated damages." Appellant cannot raise this argument at this late date. It waived this statutory defense both by not raising it in its Answer and by entering into the stipulation for the jury regarding the amount due if they found appellee worked 80 hours. As an affirmative defense, it must have been pled and argued at trial or it is forever barred.

**18.** *See generally, Henderson v. Snider Bros., Inc.*, D.C.App., 409 A.2d 1083 (1979).

was not applicable to determinations by administrative agencies. However, the modern trend is to hold the doctrine applicable when "[the] agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *See Cartier v. Secretary of State*, 165 U.S.App.D.C. 130, 135 & n. 3, 506 F.2d 191, 196 & n. 3 (1974), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *District of Columbia v. Ray*, D.C.App., 305 A.2d 531 (1973); K. Davis, Administrative Law of the Seventies § 18.02 (1976). The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding. In the present case, there is no evidence to indicate that the Minimum Wage Board was acting in anything more than an investigatory capacity. Indeed, we do not read the statute as conferring adjudicative functions on the Board. There is no hint here that a proceeding took place which could in any way be characterized as "judicial." The doctrine of res judicata is inapplicable.

*Affirmed.*