**CITY WIDE LEARNING CENTER, INC., Appellant,**

v.

**WILLIAM C. SMITH & COMPANY, INC., Appellee.**

**No. 84–65.**

District of Columbia Court of Appeals.

Submitted Dec. 14, 1984.

Decided Feb. 15, 1985.

---

Adrian Palmer Ifill, Washington, D.C., for appellant.

Robert P. Kaufman, Washington, D.C., with whom Joanne Sgro, Washington, D.C., was on brief, for appellee.

Before FERREN, TERRY and ROGERS, Associate Judges.

FERREN, Associate Judge:

City Wide Learning Center, Inc. ("City Wide"), a tenant, appeals from a judgment of possession for appellee William C. Smith & Co. ("Smith"), the property manager. City Wide argues that (1) Smith waived its right to enforce the lease restriction giving rise to the action for possession and (2) the trial court, in any event, should have held an evidentiary hearing before releasing to Smith the rent money held in the court registry pending resolution of the lawsuit. We affirm the judgment of possession and conclude that no hearing was necessary before the trial court released the funds.

I.

In 1975, City Wide, through its president, Ilia Bullock, entered into a commercial lease with the owner, W. Napolean Rivers, for property located at 1036 Park Road, N.W. The lease provided that City Wide, an educational center, would maintain its offices on the premises and "[would] not sublet or assign the ... premises, ... or carry on any business therein except that of learning, without the written consent of the lessor."

In 1978, Rivers sold the property to Ronald J. Chancellor and H. Peter Larson, who in early 1982 contracted with Joseph E. Borger to manage the property. Shortly thereafter, in April 1982, City Wide moved its offices to another location, permitting Ms. Bullock's two sons to reside at the Park Road premises to protect certain property which City Wide had left behind. Ms. Bullock's sons lived continuously on the premises thereafter, but the corporation continued to pay the rent, at first to Borger and then to William C. Smith & Co., which replaced Borger as property manager in August 1983.

In January 1983, City Wide filed a tenant petition with the Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division ("RACD"), alleging that the owners had unlawfully raised the rent. The complaint alleged, in effect, that the property was now being used residentially and that the owners accordingly should have registered it as a "housing accommodation" subject to rent control under D.C. Code § 45–1516(d) (1981).

After a hearing, the Rent Administrator dismissed City Wide's petition on July 15, 1983, concluding that: "[1] the subject property [was] commercial property; [2] the ... property [was] not a housing accommodation within the meaning of [D.C. Code § 45–1503(8) (1981 & Supp. 1984)]; [3] Petitioner [City Wide] [was] a commercial tenant." The Rent Administrator also noted, however, that the "landlord" (Borger) "has allowed the property to be used for residential purposes, with or without his knowledge. Consequently, if residential tenants are allowed to remain on the premises, the ... property may be defined as a housing accommodation...." The Rent Administrator accordingly ordered that "Landlord Respondent must properly register the ... property as a housing accommodation within 45 days after the issuance of [this] decision[,] [provided] that non-commercial tenants are still residing within the ... property at that time." City Wide did not appeal the dismissal of its petition to the Rental Housing Commission ("RHC"); as permitted by law under D.C. Code § 45–1513(a)(2) (1981).

On August 29, 1983, William C. Smith & Co., which had just replaced Borger as property manager, filed suit for possession in Superior Court, alleging that City Wide had committed a breach of its lease by permitting residential occupancy of the building.[1] City Wide responded that its president, Ms. Bullock, had entered into an

---

1. City Wide filed a counterclaim alleging housing code violations but later agreed to its voluntary dismissal.

oral agreement with Borger and the owners (Chancellor and Larson) permitting her sons to live in the building after the corporation moved. As a result of this agreement, she argued, her sons were now the tenants. City Wide also raised essentially the same defenses presented to the Rent Administrator.[2]

The court expressly found that there had been no such oral agreement; that the lease was commercial; and that City Wide had never effectively vacated the premises. The court accordingly concluded that City Wide had violated the lease restriction on the use of the premises and entered judgment of possession for William C. Smith & Co.

## II.

■ On appeal, City Wide contends that the trial court erred in granting the judgment of possession because William C. Smith & Co. had waived enforcement of the lease restriction since both the owners and the former manager, Borger, had known that residential tenants lived in the building and had told Ms. Bullock she could rent out the property. In any event, Smith itself had continued to accept rent from City Wide after the March 1983 RACD hearing, with knowledge of the building's residential use; for this additional reason, there-

fore, Smith had waived its right to enforce the lease restriction.[3] City Wide also contends that, irrespective of the right to possession, the trial court should have held a *McNeal*[4] hearing before releasing to Smith the rent money which City Wide had paid into the court registry pending resolution of the lawsuit.

William C. Smith & Co. replies that the trial court's findings on the waiver issue, and thus on the right to possession, were not "plainly wrong," D.C. Code § 17–305(a) (1981). Alternatively, the Rent Administrator's finding that the tenancy was still commercial—which was not appealed to the RHC—was binding on the trial court and thus precludes any claim that City Wide had not violated the lease restriction. Finally, says Smith, no *McNeal* hearing was necessary before the court released funds from the court registry since the lease is commercial, not residential.

## A.

The "waiver" theory, as such, was not clearly articulated to the trial court. However, the facts underlying City Wide's two waiver arguments on appeal were presented to the trial court for its determination as to whether the premises had become residential or were still commercial.[5] Implicit

---

**2.** City Wide contended that after it vacated the premises, the property was used for residential purposes; thus, the premises were no longer under a commercial lease. City Wide also asserted that William C. Smith & Co. had given no notice to quit; accordingly, there could be no eviction because Smith had failed "to comply with [requirements of] title 45 [of the] D.C. Code."

**3.** City Wide also claims that, because Ms. Bullock's sons were still living on the premises 45 days after the RACD decision, the property became "residential" in character and should have been registered as a "housing accommodation." The court accordingly erred in concluding that the property was commercial. There is no merit to this argument. The RACD decision was issued on July 15, 1983. William C. Smith & Co. filed suit for possession on August 29, 1983. Smith accordingly filed within 45 days of the RACD decision, which was all the Rent Administrator's order required Smith to do to avoid

registration of the building as a residential property.

**4.** *McNeal v. Habib,* 346 A.2d 508 (D.C.1975).

**5.** Both Ms. Bullock and one of the owners, Ronald Chancellor, testified that, in 1978, some tenants were living in the basement of the premises. Chancellor denied knowing that Ms. Bullock's sons were living in the building until he was apprised of this at the RACD hearing. Chancellor further testified that he had denied Ms. Bullock's request to rent out the property; he also stated that he had instructed the then manager of the property to take whatever steps necessary "to keep the property commercial." He noted that the rent was continuously paid by City Wide on City Wide checks. At least one of these checks, dated August 4, 1983, was in evidence, and an agent of William C. Smith & Co. testified that Smith had accepted rent checks paid by City Wide in August and September 1983, after issuance of the Rent Administrator's

in the court's findings and conclusions (specified above) was a determination that because the premises were commercial, the landlord had not waived its right to enforce the lease restriction on use of the premises.

■ "Although a lessor may waive a breach of a covenant by subsequent acceptance of rent, the question of waiver is one of intent . . . ." *Shannon & Luchs Co. v. Tindal*, 415 A.2d 805, 806 (D.C.1980); *Kaiser v. Rapley*, 380 A.2d 995, 997 (D.C.1977) (citations omitted). Evidence that would bear on a claim of waiver was presented by both sides. *See supra* note 5. This evidence was sufficient for the trial court to conclude that the lessor had not acquiesced in the tenant's residential use of the premises. *See Shannon & Luchs Co.*, 415 A.2d at 807; *Kaiser*, 380 A.2d at 997. We conclude, accordingly, that the trial court's ruling that City Wide committed a breach of its covenant to use the premises only for the commercial purposes specified in the lease was not "plainly wrong," D.C. Code § 17–305(a) (1981), and therefore must be sustained.

## B.

■ Although the trial court made findings of fact de novo, we should note that this may be a case properly governed by the principles of administrative collateral estoppel (issue preclusion). These principles apply when "[the] agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966);

*William J. Davis, Inc. v. Young*, 412 A.2d. 1187, 1194 (D.C.1980) (citations omitted); *see* 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 21:2 (2d ed. 1983). "The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding." *Davis*, 412 A.2d at 1194.

■ Here, as in *Davis*, the applicable statute confers adjudicative functions on the agency.[6] The parties appeared before a hearing examiner and presented testimonial and documentary evidence. During the hearing, City Wide and Borger, the former property manager, litigated the question of whether the property had been converted from commercial to residential use. That issue was resolved in favor of the lessor; the Rent Administrator concluded that the property was commercial and that City Wide was the current commercial tenant.[7] City Wide did not appeal that ruling to the RHC; the Rent Administrator's decision, therefore, became a final order.

If the hearing was "the essential equivalent of a judicial proceeding," *Davis*, 412 A.2d at 1194, the trial court would have been bound by the Rent Administrator's findings in the subsequent suit for possession as a matter of collateral estoppel (issue preclusion). We need not resolve whether there would be a preclusive effect here, since the trial court ultimately made the same findings. We identify this issue, however, to alert the bar, the courts, and the affected administrative agencies to the difficult questions inherent in the interplay

July 1983 decision. The agent also testified that he had no knowledge of any residential tenants on the premises until he visited the property on October 13, 1983.

6. D.C. Code § 45–1515(h)(1) (1981) provides:
The Rent Administrator shall have the power to hold hearings, sit and act at those times and places within the District of Columbia, administer oaths, and require by subpoena or otherwise the attendance and testimony of witnesses and the production of books,

records, correspondence, memoranda, papers, and documents as the Rent Administrator may deem necessary in carrying out his or her functions under this chapter.

7. Because of City Wide's allegations that tenants were living on the premises, the Rent Administrator had jurisdiction to determine whether it had jurisdiction to hear City Wide's complaint over the rent increase. *See Auger v. D.C. Bd. of Appeals and Review*, 477 A.2d 196, 207 (D.C. 1984).

between administrative and judicial forums in the landlord-tenant field.[8]

### III.

City Wide contends, finally, that the trial court should have held a hearing before releasing to William C. Smith & Co. the rent money City Wide paid into the court registry pending resolution of the lawsuit. We disagree.

■■ In a landlord's action for possession, the court typically enters a protective order requiring the tenant to pay some or all of the rent into the court registry until the suit is resolved. If the tenant has alleged housing code violations that would offset the amount of rent due, but the case is dismissed or otherwise resolved without consideration of the alleged code violations, the court must hold an evidentiary hearing to determine how the payments into the registry should be allocated. *See Goodwin v. Barnes,* 456 A.2d 1246, 1247 (D.C.1983), *McNeal v. Habib,* 346 A.2d 508 (D.C.1975). Accordingly, we have said that an evidentiary hearing "is only appropriate at the conclusion of the suit for possession if the trial of the case, itself, does not determine the proportionate rights of the parties." *Dameron v. Capitol House Associates Ltd. Partnership,* 431 A.2d 580, 583 (D.C. 1981) *quoted in Smith v. Interstate General Corp.,* 462 A.2d 1133, 1134 n. 3 (D.C. 1983); *Goodwin,* 456 A.2d at 1247.

■■ Where, as here, there has been a complete adjudication on the merits and no entitlement to an offset is even alleged, the court may properly release the funds in the registry to the landlord without an evidentiary hearing. *Smith,* 462 A.2d at 1134 n. 3 (no *McNeal* hearing required where tenant "did not allege any housing code violations, and there is no indication in the record that the 'proportionate rights of the parties' were not settled at trial" (citations omitted) ).[9]

*Affirmed.*

---

**8.** If this case had come before us in a different posture, other difficult issues might have been presented. For example, if City Wide, the tenant, had appealed the Rent Administrator's decision to the Rental Housing Commission, and the landlord had filed suit for possession before the Commission had issued a decision, the doctrine of primary jurisdiction would have required the trial court to stay its proceedings until the Commission had reached a determination. *Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115, 1120 (D.C.1983); *see Interstate Gen. Corp. v. District of Columbia Rental Accommodations Comm'n,* 441 A.2d 252, 254 (D.C.1982). Alternatively, had the Rent Administrator ruled against the landlord, and the landlord had then filed

suit in Superior Court for possession, the court would have confronted the question of exhaustion of administrative remedies. *See Beal v. District of Columbia Rental Hous. Comm'n,* 474 A.2d 829, 830 (D.C.1984) (citing *Malcolm Price, Inc. v. District Unemployment Compensation Bd.,* 350 A.2d 730 (D.C.1976) ).

**9.** As in *Davis v. Gulf Oil Corp.,* 485 A.2d 160, 172 & n. 14 (D.C.1984), we need not address appellee's contention that, because a commercial, not residential, lease is at issue, a *McNeal* hearing is not required before the court can release rental funds from the court registry.