Victor PINZON, Appellant,

v.

A & G PROPERTIES, Appellee.

No. 02–CV–358.

District of Columbia Court of Appeals.

Argued April 3, 2003.
Decided April 28, 2005.

Victor Pinzon, appellant *pro se.*

Stephen O. Hessler for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge.

This appeal arises from a landlord-tenant dispute. Although the case has a rather protracted history, in the course of which it came before at least five different trial judges, the appeal is taken only from an order releasing to the landlord the

money that the tenant previously paid into the court registry under a protective order. We affirm the order releasing the money in the registry to the landlord.

## I

On December 6, 2001, appellee A & G Properties ("A & G") filed in the Superior Court a "Complaint for Possession of Real Estate" against appellant, Victor Pinzon,[1] seeking possession of a basement office in a building on Massachusetts Avenue, N.W., in downtown Washington. The complaint alleged that "[the] commercial lease term [had] expired and occupant failed to vacate at end of term; no notice required in this instance." At a hearing in the Landlord and Tenant Branch before Judge Cheryl Long on December 27, 2001, appellant proffered a lease dated September 1, 2000, which purportedly entitled him[2] to occupy the premises through February 28, 2002. A & G in turn presented a sublease which, it argued, was controlling because it bore a date (December 1, 2000) after the date on the lease proffered by appellant. This sublease, by its terms, expired on November 30, 2001. Judge Long set a trial date for March 1, 2002, the day after the lease proffered by appellant expired.[3]

On January 16, 2002, A & G filed a motion for a protective order, asserting that it was "entitled to the traditional protective order ... where the landlord's ability to recover immediate possession is delayed by a tenant request for trial." A & G asked for the order to be retroactive to December 27, 2001, "at the contract rate of $1200 per month." The motion was granted by Judge Steffen Graae, and a protective order was entered on January 18, 2002, requiring appellant to pay $1354 into the court registry by January 31,[4] and $1200 monthly thereafter "until completion of the case or further order of this court." Appellant—represented by counsel at the time—filed a motion for reconsideration, arguing that the leased premises were a "residential accommodation," and that he therefore had no duty to pay rent because the premises were not in a "habitable condition." He offered a litany of property damage and hazardous conditions allegedly caused by construction work which had been ordered by A & G.[5] The motion for reconsideration was denied.

On February 22, 2002, A & G moved for judgment on the pleadings, arguing that there was no defense possible for appellant since the lease that he proffered would expire on February 28, six days later. On

1. The complaint, as well as the numerous motions that followed, listed the defendant as The Americas Foundation, a non-profit organization of which appellant was president. On July 25, 2002, this court entered an order allowing Mr. Pinzon to proceed on appeal *pro se* as an individual.

2. The tenant named on this lease was "Victor Pinzon dba The Americas Foundation."

3. Because the record contains no transcript of this hearing and no written findings by Judge Long, it is unclear which lease the judge found to be controlling, if indeed she made such a determination at all. For the purposes of this appeal, however, it makes no difference.

4. This sum included a prorated amount of back rent ($154) for the last five days of December.

5. The motion also stated that "[d]uring numerous visits and inspections the various landlords observed the living quarters in the unit and so long as rent was paid said nothing or objected." Appellant took this approach because, as he acknowledged in his motion, a tenant of commercial property must pay rent regardless of whether the landlord has fulfilled its contractual obligations. *See Norris v. Green*, 656 A.2d 282, 286 (D.C.1995); *Interstate Restaurants, Inc. v. Halsa Corp.*, 309 A.2d 108, 110 (D.C.1973).

March 1 Judge Mary Ellen Abrecht entered a judgment for possession in favor of A & G.

On March 12, in an effort to persuade the court to return the money paid into the court registry under the protective order, appellant filed a *pro se* "Motion to Refund Lease Payments." The crux of his argument was that he had no duty to pay rent while the protective order was in effect because the construction work that was going on during this time rendered the premises "uninhabitable."[6] This motion was scheduled to be heard on March 20, along with a *pro se* "Application for Stay of Execution of Writ of Restitution," but Judge Zoe Bush granted a continuance until March 26.

On the latter date, both motions came before Judge Michael Rankin for a hearing. Appellant asked for another continuance, but that request was denied. Judge Rankin then ordered that the funds in the court registry be released to A & G, and from that order appellant noted this appeal.

## II

■ The decision to grant or deny a continuance is entrusted to the sound discretion of the trial court, and its ruling will be reversed only for a clear abuse of discretion. *E.,g., Harris v. Akindulureni,* 342 A.2d 684, 686 (D.C.1975). Moreover, in order to win reversal, appellant must demonstrate prejudice resulting from the denial of a continuance. *See Hairston v. Gennet,* 501 A.2d 1265, 1268 (D.C.1985). We find neither an abuse of discretion nor any identifiable prejudice.

■ Judge Rankin's denial of appellant's motion for a further continuance was not an abuse of discretion. On March 19 A & G filed and served an opposition to appellant's motion for release of funds. Thus, as A & G points out, by the time the March 26 hearing took place, appellant had had one week to prepare with full knowledge of the issues that were going to be raised. Moreover, because the earlier motion for reconsideration filed by appellant's counsel made essentially the same assertions about the construction work and the allegedly hazardous conditions resulting from it, appellant actually had more than six weeks—since at least February 8, when Judge Graae denied the motion for reconsideration—to prepare for the hearing.

■ Moreover, appellant can show no prejudice resulting from the denial of a continuance. As we shall explain in part III of this opinion, none of appellant's claims of property damage or "environmental and health hazards" were relevant to the proceedings. Thus, even if he had been given more time, it would only have been more time to gather irrelevant evidence.

## III

Appellant argues that the conditions created by A & G's construction work—which he says rendered the premises "uninhabitable"—should offset the rent paid into the court registry. Such a claim is colloquially known as a *Javins* defense. *See generally Javins v. First National Realty Corp.,* 138 U.S.App. D.C. 369, 428 F.2d 1071 (1970).

---

**6.** Essentially repeating the arguments previously made in the motion for reconsideration (filed by counsel), appellant maintained that the construction work had caused "substantial and extensive damages, business and operational losses, environmental and health hazards ...." Appellant presented an extensive list of hazardous conditions allegedly created by A & G and, in addition, quoted findings by an inspector from the Occupational Safety and Health Administration (OSHA).

Appellant's proffered grounds for a set-off fall into two categories: (1) damage to his personal property and (2) the alleged uninhabitability of the premises due to a lack of heat and hot water and the hazardous conditions attributable to the construction work.[7]

## A. *Damage to personal property*

■ With respect to the alleged property damage, the law is clear: "Rule 5(b) of the rules of the Landlord and Tenant Branch[8] does not permit the filing of a counterclaim for damages to the tenant's personalty." *Miles Realty Co. v. Garrett*, 292 A.2d 152, 153 (D.C.1972) (footnote omitted); *accord, e.g., Hines v. John B. Sharkey Co.*, 449 A.2d 1092, 1093 n. 3 (D.C.1982) ("Claims for personal injury ... or for damages to personalty ... may not be raised in the Landlord and Tenant Branch of Superior Court"). Consequently, appellant must bring a separate action in the Civil Division for any alleged damage to his personal property.[9]

## B. *Habitability*

■ Because this case involves a commercial (rather than residential) lease, evidence of hazardous conditions created by the construction work was not relevant to the issue of whether appellant should receive a set-off from the money paid into the court registry. The trial court therefore did not abuse its discretion in refusing to allow appellant to present such evidence at the hearing.

Protective orders were first suggested in a footnote in the *Javins* case, 138 U.S.App.D.C. at 381 n. 67, 428 F.2d at 1083 n. 67, and soon thereafter were considered more expansively in *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970). "In a landlord's action for possession, the court typically enters a protective order requiring the tenant to pay some or all of the rent into the court registry until the suit is resolved." *City Wide Learning Center, Inc. v. William C. Smith & Co.*, 488 A.2d 1310, 1314 (D.C. 1985). One of the rationales behind protective orders is that a landlord is "entitled to judicial protection of his fair compensation 'for the possession he loses during the period of litigation.'" *Dameron v. Capitol House Associates Limited Partnership*, 431 A.2d 580, 584 (D.C.1981) (citations omitted). Later, after the landlord-tenant litigation has been resolved, the funds that have been paid into the court registry under the protective order are disbursed by the court. When residential property is involved, this generally occurs after what has come to be known as a *McNeal* hearing. *See McNeal v. Habib*, 346 A.2d 508, 514 (D.C.1975).[10]

Appellant's claim of entitlement to the funds in the registry is based essentially on his claim that the landlord's construction work on the building made the leased premises "uninhabitable"—in other words, on his proffered *Javins* defense. Such a defense—*i.e.*, an assertion, based on alleged housing code violations, that the landlord breached the implied warranty of

---

7. These hazardous conditions, according to appellant's brief, included exposure to lead paint, asbestos, silica, and construction dust and fumes.

8. See note 13, *infra*.

9. Appellant acknowledges in his brief that "[t]hese issues will be addressed at another time in another court."

10. A hearing and a court order may not be necessary, however, if the parties can agree between themselves on the disbursement of the money. *See McNeal*, 346 A.2d at 515 n. 16.

habitability—is not available in this case for at least three reasons.

First, we are dealing here with a commercial lease,[11] so that any problems with the property that might be otherwise regarded as housing code violations are irrelevant. *See Interstate Restaurants, supra* note 5, 309 A.2d at 110 ("The rationale of [*Javins*] does not, in our view, extend to a commercial lease such as here involved, even assuming that the breaches alleged were of the nature of those fundamentally underlying *Javins*"). Second—despite the unfortunate use of the term "habitable" in the section of the lease upon which appellant bases his claim for a set-off [12]—the issue raised by appellant deals not with whether A & G rendered the premises "uninhabitable," but whether it breached the contract by charging rent during the period in which these adverse conditions persisted. Thus appellant's claim is actually one for breach of contract, which must be brought in a separate proceeding in the Civil Division. *See Millman Broder & Curtis v. Antonelli*, 489 A.2d 481, 484 (D.C.1985) ("where commercial property is involved, the mere fact that a counterclaim is related to the premises does not permit such a matter to be raised under [Landlord and Tenant] Rule 5(b) unless based upon a payment or credit against rent" (citation omitted)).[13] Third, even if appellant could theoretically raise a *Javins* defense in the commercial context, Rule 5(b) is quite clear that a set-off can be asserted only when the landlord's possessory action is based on non-payment of rent. A & G's action for possession was based not on any failure to pay rent, but on the fact that appellant's lease term had expired. Allowing appellant to litigate such complex issues in the Landlord and Tenant Branch would run counter to the plain language of Rule 5(b) and would frustrate the purpose of the Landlord and Tenant rules, which were "designed to insure an expeditious resolution of landlord-tenant disputes." *Campos v. Aguila*, 464 A.2d 132, 133 (D.C.1983).

## IV

Finally, appellant argues that A & G was not entitled to possession of the premises. Even if properly preserved for appeal, this argument has no merit. The lease proffered by A & G expired on November 30, 2001, and the lease proffered by appellant expired on February 28, 2002; thus, under either lease, appellant had no right to occupy the premises on or after

11. Appellant does not renew on appeal his claim that the leased premises were residential. Indeed, he concedes that they were commercial by stating in his brief, "A & G's actions rendered Pinzon's leased space inoperative, uninhabitable; therefore leaving Pinzon unable to operate his normal businesses and or the Foundation's," and that as a result of the landlord's shutting off the water "to the only bathroom" in August 2001, "Pinzon and his ... interns, visitors, business partners and others could not wash their hands or have water in the bathroom."

12. Appellant cites the following language in the lease: "That if said premises become uninhabitable by reason of fire or other casualty not caused by the negligence of the tenant, his servants or agents, the rental herein reserved shall be suspended until said premises shall have been restored to a habitable condition."

13. L & T Rule 5(b) provides in part:

(b) *Counterclaims.* In actions in this branch for recovery of possession of property *in which the basis of recovery is non-payment of rent* in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch. [Emphasis added.]

March 1, 2002—the date on which the judgment of possession was entered. According to D.C.Code § 42–3201 (2001), "When real estate is leased for a certain term ... the landlord shall be entitled to the possession, without [a notice to quit], immediately upon the expiration of the term." Furthermore, even if A & G committed a breach of contract, that breach would not provide appellant any defense in this landlord-tenant action for possession. "In the unique context of a landlord's summary suit for possession, a defense premised upon a failure of the landlord to perform other obligations is inappropriate. Such a failure on the part of the landlord is irrelevant in assessing the propriety of possessory relief, for a tenant is not entitled to withhold rent based on any other asserted breach of contract." *Winchester Management Corp. v. Staten,* 361 A.2d 187, 192 n. 13 (D.C.1976).

### V

For the foregoing reasons, the order from which this appeal is taken is in all respects

*Affirmed.*