**MADISON HOTEL, et al., Petitioners,**

**v.**

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SERVICES, Respondent.**

**Liberty Mutual Insurance Co., Intervenor.**

**Celina Farias, Intervenor.**

**No. 85–471.**

District of Columbia Court of Appeals.

Argued Jan. 28, 1986.

Decided July 31, 1986.

---

Jeffrey W. Ochsman, Washington, D.C., for petitioners.

Charlotte Brookins-Pruitt, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Robert P. Scanlon, Rockville, Md., for intervenor Liberty Mut. Ins. Co.

Michael V. Kowalski, Washington, D.C., for intervenor Farias.

Before NEBEKER, BELSON, and TERRY, Associate Judges.

NEBEKER, Associate Judge:

Petitioners Madison Hotel and Western Employers Insurance Company (Western Employers) appeal a decision of respondent Department of Employment Services (DOES) granting workers' compensation benefits to Celina Farias. Petitioners contend that DOES erred in concluding that Farias' failure to timely notify petitioners of her injury was excused, and therefore did not bar her claim for compensation. We agree with petitioners and reverse and remand the case for further proceedings.[1]

Celina Farias has worked at the Madison Hotel bussing tables for approximately thirteen years. During those years, she has sustained numerous work-related injuries to her hands and wrists.[2] On January

---

1. Petitioners also contest the conclusion of DOES that Farias suffered a compensable injury in January 1983, and not merely an exacerbation of a pre-existing condition. Because we reach only the notice question, this issue is left for another day.

2. Specifically, on June 13, 1972, Farias slipped on a wet floor and injured her left hand. On

June 4, 1976, she injured the same hand after being hit by a swinging door. She then scratched her right hand on a chair on February 17, 1977. On June 7, 1979, she sprained her right wrist while lifting a tray of dishes or glasses, and on July 26, 1982, she dropped a tray of glasses, injuring her left hand. Farias asserted that on each of these occasions, either a

17, 1983, Farias was attempting to lift a splash pan filled with dishes when it fell upon her right wrist. There were no witnesses to the accident, but a short time later, a co-worker observed Farias putting ice on her hand. Farias did not report the accident to her employer because she was embarrassed about the number and frequency of her hand injuries.[3]

Farias completed her shift that day and returned to work the following day as well. However, the condition of her hand had worsened. While putting ice on her hand, Farias, who speaks only Spanish, asked a co-worker how to say "is my claim still open?" in English. She then went to the personnel office.

Farias attempted to communicate the fact of her injury to the personnel manager, Nancy Monaco, who speaks only English. According to Farias, she showed Monaco her wrist and asked if her case was still open. She then asked if she could see a physician, Dr. Jaller, whom she had seen for treatment of her July 1982 injury. According to Farias, Monaco told her to "go ahead" and see Dr. Jaller.

Monaco could not recall meeting with Farias in January 1983. Moreover, according to Monaco, she at no time discussed a January 1983 injury with Farias. In any event, on January 31, 1983, Farias went to Dr. Jaller for treatment of her hand.

The next month, Farias returned to Monaco's office with disability certificates and physical therapy reports. Some of the certificates were dated as far back as July 1982, while others were as recent as February 11, 1983. The therapy reports were dated February 8 and 10, 1983. Showing Monaco the certificates and reports, Farias patted her wrist and said, "I never got paid for it." Because there was no record of a subsequent injury on file, Monaco assumed that the certificates and reports related to the July 26 injury. Farias was paid for the time that she was absent from work to attend physical therapy.[4]

On February 11, 1983, Liberty Mutual Insurance Company (Liberty Mutual) received a medical report and bill from Dr. Jaller for the treatment of Farias on January 31. On March 4, Liberty Mutual contacted Monaco to determine whether Farias had missed any time from work and was told that she had not.

In April, Liberty Mutual undertook to discover whether Farias had suffered a new injury in 1983, or was being treated for a flareup of the July 1982 injury. This inquiry was prompted by the fact that effective January 1, 1983, Madison Hotel had switched insurance carriers from Liberty Mutual to Western Employers.[5] If Farias had suffered a new injury in January 1983, it was the position of Liberty Mutual that compensation for any resulting disability was the responsibility of Western Employers, the carrier at risk in 1983. When Liberty Mutual determined to its satisfaction that Farias' condition was the result of an injury suffered in January 1983, they contacted her attorney and informed him that it was their position that Western Em-

---

manager or supervisor was present and witnessed the accident. The manager then reported the accident to the security department.

**3.** Madison Hotel employees injured on the job are required to report any injuries to their supervisor. The supervisor then informs the security department, who sends an officer to the scene to investigate and fill out an accident report. Regulations concerning the timing and manner of reporting on the job injuries are posted in all work areas of the hotel, including the coffee shop, where Farias works. However, those regulations are printed only in English.

**4.** Farias' supervisor, Sheryl Metzner, was aware in early February that Farias was taking time off from work to attend physical therapy sessions. Metzner was also aware that Farias frequently complained about her hands. However, Metzner did not inquire as to what injury had brought about Farias' discomfort and had necessitated treatment.

**5.** Dr. Jaller and his associates, apparently unaware that the hotel had switched carriers, continued to submit medical reports and bills to Liberty Mutual throughout the spring and summer and into the fall of 1983.

ployers was responsible for any resulting disability.

On May 6, 1983, Cliston Bodine, the insurance adjuster for Western Employers, received a letter from Farias' attorney informing him of the January 17, 1983 injury. This was the first time that anyone at Western Employers had notice of a claim for injury to Farias. Bodine informed Monaco on May 11 of the claimed January 17 injury. Monaco then contacted both Farias' supervisor and the security department to determine whether either had any record of an injury to Farias on January 17. There were no such records.

The hearing examiner found that Farias had injured her wrists at work in January 1983 and that there was no dispute that she had failed to give written notice of that injury within thirty days. *See* D.C. Code § 36–313(a) (1981). The examiner then found that: (1) Farias told Monaco about the injury the day after it occurred, but Monaco did not remember Farias coming to her office that day; (2) although Farias' supervisor was aware that Farias was missing time from work and complained about her hands, the supervisor was not informed of a January 1983 work injury prior to May 1983; and (3) Western Employers had no knowledge of Farias' injury until May 1983.

Based upon these findings, the examiner then concluded that neither the employer nor Western Employers had knowledge of a January 1983 work related injury prior to May 1983. The examiner then concluded, however, that Farias' failure to give timely written notice of her injury should nevertheless be excused. This conclusion was based on: (1) the employer's change of insurance carriers; (2) the receipt of Dr. Jaller's February 8 report and bill by Liberty Mutual on February 11; and (3) Farias' "good faith attempt" to notify Monaco of her injury the day after it occurred. The examiner then went on to conclude that Farias had suffered a compensable injury

in January 1983, and that Western Employers was liable for compensating Farias for the resulting disability.

Western Employers took exception, *inter alia*, to the hearing examiner's conclusion that the failure to give timely notice of injury was excused and appealed the examiner's proposed compensation order to the Director. The Director affirmed the proposed order, concluding that D.C. Code § 36–313(d)(1) excused Farias' failure to timely notify her employer of her injury. Specifically, the Director concluded that substantial evidence supported the conclusion that "the carrier," *Liberty Mutual*, had knowledge of the injury and that neither the carrier nor the employer was prejudiced by the lack of notice. The Director went on to conclude that the examiner's conclusion that Farias had suffered a compensable work injury in January 1983 was supported by substantial evidence, and that accordingly, Western Employers, not Liberty Mutual, was the carrier liable for the payment of compensation. Petitioners now appeal the final decision of the Director.[6]

Recognizing our limited role in review of administrative proceedings, we have consistently said that "we should not disturb a decision if it rationally flows from the facts relied upon and those facts or findings are substantially supported by the evidence of record." *Kramer v. District of Columbia Department of Employment Services*, 447 A.2d 28, 30 (D.C.1982); D.C. Code § 1–1510(a)(3)(E) (1981). In addition, the court should defer to the agency's construction of a regulatory statute unless that construction is "unreasonable either in light of the record or prevailing law." *Hockaday v. District of Columbia Department of Employment Services*, 443 A.2d 8, 12 (D.C. 1982) (quoting *Thomas v. District of Columbia Department of Labor*, 409 A.2d 164, 169 (D.C.1979) (citations omitted). Simply put, the Director's decision may not stand if that decision reflects a material misconception of the law. *SEC v. Chenery*

---

**6.** Any party in interest adversely affected by a final decision rendered after review of a compensation order may petition for review of that decision. D.C.Code § 36–322(b)(3)(1981).

*Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

■ The Director concluded that Farias' failure to notify her employer of her injury within thirty days as required by D.C. Code § 36–313(a) was excused under *id.* § 36–313(d)(1) which provides that failure to give notice shall not bar any claim for benefits

> [i]f the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and its relationship to the employment and the Mayor determines that the employer or carrier has not been prejudiced by failure to give such notice. . . .

The Director concluded that substantial evidence supported the hearing examiner's finding that Liberty Mutual had acquired knowledge of Farias' injury in February 1983. We do not quarrel with this conclusion. Dr. Jaller's medical report and bill dated February 8, 1983, was received by Liberty Mutual on February 11. Soon thereafter, Liberty Mutual began an investigation into the circumstances surrounding Farias' injury and her subsequent treatment. Thus, substantial evidence supports the finding of fact which underlies the Director's conclusion. D.C.Code § 1–1510(a)(3)(E). However, the conclusion itself—that Liberty Mutual's knowledge was "knowledge" on the part of "the carrier" so as to excuse timely notice under D.C. Code § 36–313(d)(1)—is unreasonable both "in light of the record [and] prevailing law." *Hockaday v. District of Columbia Department of Employment Services, supra,* 443 A.2d at 12.

■ Parties in workmen's compensation cases, as in all other civil proceedings, may enter into a binding stipulation that conclusively relieves them of offering independent evidence of the stipulated facts. *Frank Williams Plumbing v. Workmen's Compensation Appeal Board,* 39 Pa. Commw. 588, 589 n. 1, 396 A.2d 68, 69 n. 1 (Pa.Commw.Ct.1979). The parties in this case stipulated before the hearing examiner that the "[e]mployer changed carriers from Liberty Mutual to Western Employers on January 1, 1983." The Director's scope of review of the proceedings before the examiner is limited to a substantial evidence review. *Dell v. District of Columbia Department of Employment Services,* 499 A.2d 102, 106 (D.C.1985). The stipulation provided substantial evidence of the fact that the insurance carrier for the Madison Hotel as of January 1, 1983, was Western Employers, and not Liberty Mutual. *Kostecky v. Mattern,* 69 Pa.Commw. 575, 578, 452 A.2d 100, 104 (Pa.Commw.Ct. 1982). Therefore, the Director's conclusion that Liberty Mutual, and not Western Employers, was "the carrier" is clearly unreasonable in light of the record evidence which established that the opposite was in fact true.

We also conclude that the Director's construction of section 313(d)(1) to include an employer's previous carrier is also unreasonable in light of the purpose behind the notice provisions of D.C. Code § 36–313.

Prompt notice to the employer of an on-the-job injury serves several goals. It enables the employer to provide immediate medical diagnosis and treatment, and also facilitates the earliest possible investigation of the facts surrounding the injury. 3 LARSON, WORKMEN'S COMPENSATION LAW, § 78.10 (1st ed. 1983). Early investigation serves to protect the employer and the carrier from false or fraudulent claims, and also allows for prompt correction of conditions that may have caused, or contributed to, the injury. *Good Impressions, Inc. v. Britton,* 169 F.Supp. 866, 870 (D.D.C.1958).

Section 313(d)(1) provides that failure to give prompt written notice as required by section 313(a) will not bar a claim if the employer or carrier has knowledge of the injury and has not been prejudiced by the employee's failure to notify. This section seeks to ameliorate the harsh consequences of a failure to literally comply with section 313(a) while at the same time assuring that the goals of prompt notice can also be met through actual knowledge. *See* 3 LARSON,

WORKMEN'S COMPENSATION LAW, § 78.30 (1st ed.1983).

 Such a balancing of interests cannot be achieved by allowing knowledge on the part of a previous carrier to substitute for that of the carrier at risk. The previous carrier has no incentive to aggressively and thoroughly investigate the circumstances surrounding a claimed injury. As time passes, so do the opportunities for discovery of facts essential to determining the nature, extent and validity of a claimed hurt. Here, Liberty Mutual, prompted by a belief that Farias' 1983 treatment stemmed from a recurrence of a 1982 injury, did undertake initially to investigate the circumstances surrounding Farias' claim. However, Western Employers was still denied the opportunity to promptly conduct its own investigation. As the carrier at risk at the time of the incident which gave rise to the disability, it is Western Employers that the statute seeks to protect.

Accordingly, we reverse and remand the case to the Department for further proceedings.

*So ordered.*