Ellen DE SZUNYOGH, Appellant,

v.

WILLIAM C. SMITH & COMPANY, INC., Appellee.

No. 88–884.

District of Columbia Court of Appeals.

Argued Jan. 27, 1992.
Decided Feb. 25, 1992.

Jeffrey R. Capwell, Washington, D.C., for appellant.

Ronald G. Scheraga, Washington, D.C., for appellee.

Before FERREN and KING, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellee Atlantic Realty, Inc.[1] initiated an action for possession of Apartment #304, Park Crest Building, 2070 Belmont Street, N.W., leased to appellant Ellen De Szunyogh. After a jury trial had begun, the court granted appellee's motion for directed verdict based on appellant's admitted breach of her lease agreement. Appellant was not permitted to present a defense of retaliatory eviction. The court then entered judgment for possession in favor of appellee. Soon thereafter, the trial court granted appellant's motion for a stay of execution of the judgment, thus permitting appellate review of the proper scope of *Wahl v. Watkis*, 491 A.2d 477 (D.C.1985). Specifically, appellant appeals on two grounds: (1) the trial court erred in granting appellee's motion for directed verdict, and (2) appellant is entitled to present a defense of retaliatory eviction. We reverse.

Appellant entered into a lease agreement with appellee's predecessor in interest, Atlantic Realty Co., Inc., for the rental of a one bedroom apartment. Appellant, an elderly widow, stored a substantial accumu-

---

1. Since appellant filed her brief on June 26, 1990, the management of the apartment building was transferred to William C. Smith & Co., Inc. A motion to substitute appellee was filed after Atlantic Realty filed its brief.

lation of personal possessions in the apartment for lack of other storage space.[2] In response to what she perceived as a lack of security in the building, appellant periodically replaced the locks on her door, and refused to provide appellee with duplicate keys to the new locks. Appellant testified that her possessions had been damaged and stolen, allegedly by maintenance persons who entered the apartment while appellant was not present. On one occasion, she stated that a maintenance man entered the apartment with a key provided by appellee while appellant was bathing.

In the summer of 1986, appellant testified that her apartment was in need of repair. Appellant claimed that the air conditioning unit malfunctioned, leaked, and caused water damage to her clothing, carpeting and floors. At one point, the toilet was inoperable. Appellant stated that repair work on the air conditioning unit left a gaping hole in the apartment's ceiling, and repairs on the ceiling left appellant without use of her bathtub for several weeks. Admitted into evidence were letters from appellant to appellee[3] complaining about the condition of the apartment.

Appellee served a "Notice to Cure Violation of Tenancy or Vacate" to appellant in December 1986. The notice was posted on appellant's door on December 15, 1986.[4] The notice was sent to appellant by certified mail, the receipt for which appellant signed on December 26, 1986. In its notice, appellee indicated that appellant violated the terms and conditions of tenancy by allowing hazardous material to accumulate, failing to provide the landlord with a duplicate key, and failing to provide access to her apartment. Appellant failed to cure the violations as the notice specified within the thirty-day period required by law.[5]

Appellee sought possession of the premises on two grounds: appellant's failure to provide duplicate keys to the premises,[6]

---

2. Evidence introduced at trial included photographs of appellant's apartment, which showed excessive clutter. Furniture, artwork, clothing, and other household items were stacked haphazardly, nearly reaching the ceiling. Appellant claimed Atlantic Realty had promised her storage space in another part of the building, a promise it failed to keep.

3. Appellant's letter dated October 30, 1986 states:

> Your unwillingness to do repairs in my apartment astonishes me very much. I have never asked you before for anything and you have never done any repairs!! I don't think I have to live with a hole in my ceiling. My water in the bathroom toilet not being able to use and many other things.

The letter dated November 12, 1986 states:

> I would like to inform you again, that I am living without flushing water in my toilet since this summer and many other defaults and since Nov. 10th without use of the bathtub when my ceiling was repaired Nov 10 after it was broken open in August to fix the air conditioning. The painter was witness that your plumber promised to come to repair my toilet the next morning. The very afternoon my home was broken in without notifying me, I was at home till 12:30 (witness painter). Flowerpots were put on my clothes, cleaning material, earth all over, paintings were ruined. I am emotionally drained and physically handycapped [sic] since my accident: why do tenants have to be treated like this. I hope Mr. Ayres [building manager?] you will take charge of this case.

Of particular interest is appellant's letter dated December 25, 1986. In response to appellee's requested rent increase, appellant wrote:

> July, Aug, Sept, Oct, Nov. 10 I sent you letters asking for repairs in my apartment. In your letter dated Oct. 24/86 asking for rent increase it is stated as follows "I/we certify that this property is in substantial compliance with the DC Housing Regulations and the information in this notice is true and correct to the best of my/our knowledge.["] You had knowledge for years not only the last 6 months that the apartment is not in compliance with regulations. I paid the rent increases before because I want to live in peace but it seems lately that you look for the contrary. Not only is the apartment not in compliance but I am harassed as well. I therefore object to the rent increase! I sent you the additional $17 check in order to live in peace and show you my good will.

4. The process server indicated on his sworn certificate of service that appellant was in the apartment when he arrived with the notice. She identified herself, but refused to open the door.

5. D.C. Code § 45–2551(b) (1990).

6. Appellant's failure to provide duplicate keys violated paragraph 26 of the lease agreement, which states that "[t]he Lessor shall retain duplicate keys to all of the doors of the leased premises, and the Lessor, or its agent, shall have access to the leased premises, at all reasonable

and the accumulation of hazardous materials within the apartment.[7] Appellant challenged appellee's action for possession on the ground that, in spite of appellant's violation of her lease, appellant's actions were justified given unauthorized entries, broken locks, and damage to her personal property. Relying on appellant's conceded refusal to provide appellee with duplicate keys to the premises, the trial court granted appellee's motion for directed verdict[8] and entered judgment for appellee.[9]

The trial court's refusal to permit appellant to present a defense of retaliation was based upon its reading of *Wahl v. Watkis, supra.* Housing providers cannot take retaliatory action against a tenant who exercises rights conferred by law. D.C. Code § 45–2552(a) (1990). In determining whether an action taken by a housing provider against a tenant is retaliatory action,

> the trier of fact shall *presume* retaliatory action has been taken, and shall enter judgment in the tenant's favor unless the housing provider comes forward with clear and convincing evidence to rebut this presumption, if within the 6 months preceding the housing provider's action, the tenant:
>
> (1) Has made a witnessed oral or written request to the housing provider to make repairs which are necessary to bring the housing accommodation or rental unit into compliance with the housing regulations;
>
> (2) Contacted appropriate officials of the District government, either orally in the presence of a witness or in writing, concerning existing violations of the housing regulations in the rental unit the tenant occupies or pertaining to the housing accommodation in which the rental unit is located, or reported to the officials suspected violations which, if confirmed, would render the rental unit or housing accommodation in noncompliance with the housing regulations;
>
> (3) Legally withheld all or part of the tenant's rent after having given a reasonable notice to the housing provider, either orally in the presence of a witness or in writing, of a violation of the housing regulations;
>
> (4) Organized, been a member of, or been involved in any lawful activities pertaining to a tenant organization;
>
> (5) Made an effort to secure or enforce any of the tenant's rights under the tenant's lease or contract with the housing provider; or
>
> (6) Brought legal action against the housing provider.

D.C. Code § 45–2552(b) (1990) (emphasis added).

In *Wahl v. Watkis, supra,* the landlord served a ninety-day notice to vacate,[10] in order that the landlord could recover possession of the rental unit for his immediate and personal use and occupancy as a dwelling. The tenant claimed that she was unhappy she had to move and that she had been responsible for causing a delay in the sale of the property by the former owner to this landlord. Because the tenant failed to allege retaliation by the present landlord based on the delay the tenant had caused in

---

hours, in order to inspect the same, or to make necessary repairs...."
We observe that paragraph 20 of the lease provides that "[n]o additional locks shall be placed upon any doors of the premises without the written approval of the Lessor."

**7.** Appellee argued that the accumulation of personal possessions violated paragraphs 15 and 22 of the lease agreement, which forbid the "creation of a nuisance," and acts "deemed extrahazardous on account of fire or that will increase the rate of insurance on said premises."

**8.** In order to grant a motion for directed verdict, the trial court must find, viewing the evidence in the light most favorable to the party against whom the verdict is sought, that the evidence is so clear that reasonable people could reach but one conclusion. *Bauman v. Sragow,* 308 A.2d 243, 244 (D.C.1973); Super.Ct.Civ.R. 50(a).

**9.** Appellant also challenged the sufficiency of the notice to cure or vacate due to its "ambiguous" terms. The trial court noted that the sufficiency of the notice to cure with respect to "hazardous materials" would properly be a jury question. Service of the notice to cure or vacate was sufficient as a matter of law.

**10.** The notice to vacate was served pursuant to former D.C. Code § 45–1561(d) (1981). This matter is presently addressed in D.C. Code § 45–2551(d) (1990).

the sale, this court held that the presumption of retaliatory action by the landlord under the applicable statute,[11] did not arise. *Id.* at 480. The tenant, in that instance, raised no basis for the claim of retaliatory eviction in a situation where the landlord merely asserted his legal right to recover possession after having given proper notice.

After deciding that the tenant had failed to raise a defense of retaliatory eviction, however, the court in *Wahl* went further and stated: "The retaliation statute is applicable only where a landlord takes an action not otherwise permitted by law." *Id.* We can understand the trial court's difficulty in applying this language. To clarify for the trial court and for future litigants, we now state that if a tenant alleges acts which fall under the retaliatory eviction statute, D.C. Code § 45–2552, the statute by definition applies, and the landlord is presumed to have taken "an action not otherwise permitted by law" unless it can meet its burden under the statute.

It appears from the instant record that the content and timing of appellant's letters to appellee regarding the need for repairs to appellant's apartment are sufficient to raise the presumption of retaliatory action under D.C. Code § 45–2552(b)(1). The two letters admitted into evidence were delivered to appellee in October and November 1986, within six months preceding appellee's action for possession filed in February 1987. Once the statutory presumption is triggered, as it is here, the appellee must meet its burden with clear and convincing evidence to show that its actions were not retaliatory in nature. In granting appellee's motion for directed verdict, the trial court erred in precluding appellant's presentation of a retaliatory eviction defense to the *jury*.

This court finds persuasive the trial court's own reasoning that appellant's established breach of the lease agreement in failing to provide appellee with duplicate keys alone would not necessarily defeat a retaliation defense. In its order dated August 23, 1988, the trial court stated:

> The fact that [Appellant] concedes that she failed to provide a key to [Appellant] must be distinguished from the factual question whether [Appellant] failed to provide access to her apartment.... [A]lthough the former concession warranted a directed verdict in the case, that alone would not necessarily defeat a retaliation defense, *Watkis* aside, if [Appellant] could establish that she had provided plaintiff with access. Given the facts of this case as presented at trial, a jury could reasonably have concluded (1) that although [Appellant] frequently changed her door locks and refused to provide plaintiff with new doorkeys, she may have done so because [Appellee] repeatedly broke into her apartment without authorization; (2) that, nonetheless, [Appellant] agreed to allow plaintiff to enter her apartment to make repairs upon reasonable notice to her; and (3) that this suit for possession was in fact in retaliation for [Appellant's] complaints about the uninhabitable conditions of her apartment which [Appellee] failed to correct despite having access....

Because appellant may benefit from the statutory presumption of retaliatory action by appellee, a new trial is required. Appellant is entitled to present evidence regarding appellee's alleged retaliatory actions. Whether her breach of lease covenants was justified remains an issue to be addressed at trial in the context of the retaliatory eviction claim.[12] In rebuttal appellee may present evidence of its lawful purposes for seeking appellant's eviction.

*Reversed.*

---

11. D.C. Code § 45–1562 (1981) was recodified in D.C. Code § 45–2552 in 1985, after *Wahl v. Watkis* was decided. The statute as amended is identical in all respects relevant to this appeal.

12. *See also Grubb v. Wm. Calomiris Investment Corp.*, 588 A.2d 1144 (D.C.1991) (even if residential landlord alleges prima facie case of tenant's breach of lease agreement, trial court should consider various equitable factors outlined in *Entrepreneur Ltd. v. Yasuna,* 498 A.2d 1151 (D.C.1985), before determining whether failure of tenant to cure breach should result in forfeiture of lease).