**BORGER MANAGEMENT,
INC., Appellant,**

v.

**Michael SINDRAM, Appellee.**

No. 03–CV–14.

District of Columbia Court of Appeals.

Argued Jan. 14, 2004.
Decided Oct. 14, 2005.

Phillip L. Felts, Bethesda, MD, for appellant.

Julie H. Becker, with whom Kristin Henrikson, was on the brief, for appellee.

Richard W. Luchs, Washington, DC, was on the brief for amicus curiae The Apartment and Office Building Association of Metropolitan Washington.

Vytas V. Vergeer, Bread for the City Legal Clinic, Debra Gardner, Public Justice Center, Edward Josephson, South Brooklyn Legal Services, Inc., and James R. Grow, were on the brief for amici curiae Wish, Enphront, New York State Tenants & Neighbors Coalition, The National Housing Law Project, and The National Low–Income Housing Coalition.

Rebecca Lindhurst, Bread for the City Legal Clinic, and Patricia Mullahy Fugere, and Antonia K. Fasanelli, Washington Legal Clinic for the Homeless, were on the brief for amici curiae Bread for the City and The Washington Legal Clinic for the Homeless.

Before FARRELL and WAGNER,[*] Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Borger Management, Inc. (Borger), appeals a trial court decision and order of November 22, 2002, denying its motion for partial summary judgment and granting the cross-motion for summary judgment of appellee, Michael Sindram. Borger contends that the trial judge erred in that she held that the District of Columbia Rental Housing Act (RHA), D.C.Code § 42–3501.01–3509.07 (2001), created an "endless lease," terminable only for statutory good cause, and that the federal Section 8 voucher statute, 42 U.S.C. § 1437f(a), which allows landlords to opt out of the Section 8 program at the end of the initial lease term without a showing of cause, did not preempt the inconsistent provision of the RHA. Additionally, Borger contends that the trial judge erred by failing to give *res judicata* effect to a final decision and order that an administrative law judge (ALJ) of the District of Columbia Department of Consumer and Regulatory Affairs (DCRA) granted in favor of Borger over Sindram.

We hold that the administrative proceeding before the DCRA was the equivalent of a judicial proceeding and that the issues of fact and law, as they related to the Section 8 preemption issue, were essential to the ALJ's judgment and were the same Section 8 issues upon which the trial court based its grant of summary judgment in favor of Sindram. Accordingly, without ruling on the merits of Borger's contentions regarding Section 8 preemption, we conclude that the trial court erred in failing to rule that appellee Sindram's

complaint was procedurally barred on grounds of collateral estoppel, and in failing, accordingly, to grant Borger partial summary judgment. However, as regards Sindram's alternative claim that Borger's actions represented source-of-income discrimination, we hold that that issue was not fully litigated before the ALJ and not addressed in his decision and order, and therefore we conclude that the Superior Court was not precluded from considering Sindram's motion for summary judgment on that ground. The trial court, however, denied Sindram summary judgment on that issue, unable to resolve it on the record before it. We therefore reverse the decision of the trial court denying partial summary judgment to Borger on grounds of Section 8 preemption, but remand for further proceedings on the issue of whether Borger's actions constituted source-of-income discrimination under the DCHRA. D.C.Code §§ 2–1402.21(a), – 1402.31(c) (2003).

I.

In December of 2000, the parties to this case, landlord Borger and tenant Sindram, entered into a rental contract for the residential premises at 6817 Georgia Avenue, Northwest, Washington, D.C. # 204. The rent was $700 per month, and the initial lease term was for one year. At the time the parties entered into the rental contract, Sindram was a participant in the Housing Choice Voucher Program, otherwise known as the Section 8 program. Section 8 is a federally-subsidized program administered locally by the District of Columbia Housing Authority (DCHA). It seeks to assist low-income families to obtain housing by supplementing their rental payments with government vouchers.

---

[*] Judge Wagner was Chief Judge at the time of argument. Her status changed to Associate Judge on August 6, 2005.

In order to create a Section 8 tenancy, two separate contracts must be executed. The first is a standard rental contract governing the relationship between the landlord and the tenant. The second is a Housing Assistance Payments Contract (HAP contract), governing the relationship between the landlord and DCHA. The HAP contract provides, among other things, that the tenant will pay a portion of the rent directly to the landlord, while DCHA will pay the remainder of the rent.

The parties entered into both types of contracts. Commencing on December 1, 2000, Sindram paid his portion of the rent; DCHA paid the remainder; and Borger accepted the payments. This arrangement was still in effect on August 10, 2001, at which time Borger notified DCHA and Sindram of its intent to exercise its right under the provisions of the federal legislation creating the Section 8 program to terminate its participation in the Section 8 program, effective November 30, 2001, the last day of the initial lease term. 42 U.S.C. § 1437f. Borger's August 10th notice, filed just four days after an August 6, 2001, DCRA hearing on Sindram's tenant complaint alleging housing code violations by Borger, stated that Sindram could remain in possession of the apartment, paying the full rent, but that it would no longer participate in the Section 8 program or accept partial payment vouchers from DCHA.

On August 15, 2001, in response to Borger's notification, Sindram filed a tenant petition with the DCRA, which was acting upon referral from the Rental Accommodations and Conversion Division (RACD) pursuant to Title II of the Rental Housing Act of 1985.[1] Sindram asserted that Borger's termination of its Section 8 partic-ipation was retaliatory and therefore unlawful. A hearing was held on November 5, 2001, and included the presentation of evidence, testimony of witnesses, and argument by the parties. Before the agency issued a ruling on the complaint, however, the December 2001 rent came due and Sindram and DCHA tendered to Borger rent payments which together totaled the rent owed. Borger refused to accept the payments, returned the portion tendered by DCHA, reiterating its intent to terminate the Section 8 HAP contract, and returned Sindram's payment, stating that it would not accept partial payments from him.

Subsequently, on December 17, 2001, Borger filed an action for possession in the District of Columbia Superior Court on the ground of nonpayment of rent. On February 4, 2002, Sindram filed an answer to the action for possession, setting forth numerous defenses, including the illegality of Borger's termination of the Section 8 HAP contract and of its source-of-income discrimination proscribed by the District of Columbia Human Rights Act (DCHRA). During the pendency of the possessory action, Sindram continued to make his rental payments into the registry of the court pursuant to a protective order entered by the court in January 2002. DCHA also continued to tender its portion of the rental payments directly to Borger, which continued to return the payments.

On March 15, 2002, while the Superior Court case was still pending, the DCRA issued a ruling on Sindram's tenant complaint of retaliation by Borger, ruling that Borger's decision not to renew the Section 8 lease was "permitted by law" and therefore not retaliatory. The decision and order of the DCRA stated: "The failure of

1. D.C. Law 6–10, as amended, D.C.Code §§ 45–2501 et seq. (1990), the D.C. Administrative Procedures Act, D.C.Code §§ 1–1501 et seq. (1981), and the Rules of the Rental Housing Commission, 33 DCR 2656 (May 2, 1986), 14 DCMR 3800 et seq.

the party to file a timely appeal shall result in the waiver of the right to have this Decision reviewed by the District of Columbia Court of Appeals." Appellee Sindram filed a notice of appeal, but subsequently withdrew it for reasons not disclosed by the record, leaving the decision of the ALJ unchallenged.

Notwithstanding the ruling of the DCRA, the parties continued toward resolution of Borger's action for possession, filing cross motions for summary judgment on August 30, 2002 (Sindram) and September 4, 2002 (Borger). Sindram's motion contended that the express language of the HAP contract, the District of Columbia Rental Housing Act, and the DCHRA prohibited Borger's unilateral termination of the Section 8 contract. Borger's cross-motion countered that unilateral termination was permissible under the federal Section 8 statute and that the prior administrative decision by the DCRA procedurally barred Sindram's claim under collateral estoppel and *res judicata* principles. Borger's cross-motion for partial summary judgment also sought a ruling that Sindram was obliged to pay $700 per month in rent without a DCHRA subsidy.

On November 22, 2002, the trial court granted Sindram's motion for summary judgment, and denied Borger's cross-motion for partial summary judgment as moot. In its order, the trial court ruled that D.C. law created an automatic lease extension, as long as the tenant continues to pay rent, and that therefore the lease remained in effect until terminated upon a showing of good cause. Accordingly, the trial court concluded, the HAP contract, which by its language terminates when the lease terminates, remained in effect and could not be unilaterally terminated by Borger without evidence of statutory good cause. Finally, the trial court concluded that Sindram had failed to present suffi-

cient undisputed evidence to establish as a matter of law that Borger discriminated on the basis of source of income under the DCHRA. The court did not rule on Borger's contention that Sindram's arguments were precluded by reason of the earlier agency decision. This appeal by Borger followed.

## II.

On appeal Borger contends that the federal legislation creating the Section 8 subsidy, which allows landlords to opt out of their voluntary participation at the end of the lease term without a showing of good cause, preempts local law, which requires statutorily-defined good cause for termination of a lease. Additionally, Borger contends that the trial court erred by not giving *res judicata* or collateral estoppel effect to the opinion and order issued by the ALJ in the administrative agency hearing between these same two parties. Based on these arguments, Borger contends that the trial court erred in denying its cross-motion for partial summary judgment and granting Sindram's motion for summary judgment. We find Borger's collateral estoppel argument persuasive. Thus, without reaching Section 8 federal preemption issues, we reverse the judgment of the trial court and, for the reasons explained below, remand for further proceedings on the issue of source-of-income discrimination.

■ We review grants or denials of motions for summary judgment *de novo* and apply the same standard as the trial court in reviewing and assessing the record in the light most favorable to the nonmoving party. *See Futrell v. Department of Labor Fed. Credit Union,* 816 A.2d 793, 801–02 (D.C.2003). We will uphold a grant of summary judgment when " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judg-

ment as a matter of law.'" *Id.* at 802 (quoting Super. Ct. Civ. R. 56(c)).

On August 15, 2001, Sindram, after receiving notice of Borger's intent to terminate his Section 8 tenancy, filed a tenant petition with the Rent Administrator at the DCRA. In his petition he alleged that Borger's termination of his Section 8 tenancy was retaliatory and that it was the equivalent of a notice to quit. At a full hearing before an ALJ of the DCRA, Sindram argued that Borger's decision not to renew the Section 8 lease was "an unlawful act of retaliation directed at him in response to the hearing held in Tenant Petition 27,056." Borger stated conversely "that it was not retaliating against [Sindram] because he had exercised his right to file [Tenant Petition] 27,056 but was simply exercising its legal right to discontinue the Section 8 lease for [Sindram's] unit." Subsequently the agency issued a decision and order finding in favor of Borger, specifically stating "Respondent's [Borger's] decision not to renew the Section 8 lease for Petitioner's [Sindram's] unit is permitted by law. Accordingly, the ALJ finds that Petitioner's claim of retaliation is not applicable here and is dismissed because the alleged retaliatory action by Respondent is permitted by law." This ruling forms the basis for Borger's argument that Sindram's claims before the trial court are precluded as having already been litigated.

▮▮▮ The doctrine of collateral estoppel generally precludes the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 703 (D.C.1993). Similarly, the doctrine of *res judicata* precludes relitigation of the same claim between the same parties.

*Oubre, supra,* 630 A.2d at 703. Both of these doctrines apply to the results of administrative proceedings "when the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Id.* (citing *William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1194 (D.C.1980)). The threshold question is "whether the earlier proceeding [was] the essential equivalent of a judicial proceeding." *Id.* There are exceptions to the policy of applying these principles to agency rulings. For example, "manifest error in the record of the prior proceeding has been recognized as an exception to the application of res judicata to administrative determinations." *Oubre, supra,* 630 A.2d at 703. In considering whether there is manifest error in agency rulings, of course, we remain mindful that we owe deference to an agency's interpretation of the statute it administers. In that regard, we pointed out in *Oubre* that we must sustain the agency's interpretation even if we might have been persuaded by an alternative interpretation "had we been construing the statute in the first instance." *See id.* at 702 (quoting *Smith v. District of Columbia Dep't. of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988)).

The parties to this matter do not dispute that they are the same two parties who were involved in the administrative hearing before the DCRA. Rather, Sindram contests whether (1) the agency was acting in a judicial capacity when it rendered its ruling, (2) his current challenge to the legality of Borger's termination of the HAP contract is "the same claim," as required by *res judicata* doctrine, or (3) his instant claim was "actually litigated" and "essential" to the prior administrative judgment, as required by collateral estoppel doctrine. We agree with Sindram that we are not considering identical claims be-

tween identical parties and, therefore, we do not apply *res judicata* principles. However, if the agency was acting in a judicial capacity, the circumstances before us present a case in which collateral estoppel principles apply, unless a recognized exception dictates otherwise.

■ Sindram argues that DCRA was not acting in a judicial capacity as it was not " 'resolving disputed issues of fact properly before it which the parties ha[d] an adequate opportunity to litigate.' " *Davis, supra,* 412 A.2d at 1194 (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Sindram focuses solely on the language "disputed issues of fact," arguing that the question of whether Borger could legally terminate the HAP contract, in light of local law, was a legal question rather than a factual question and therefore not precluded by collateral estoppel. *Id.* We find his focus too narrow.

■ The cases Sindram cites in support of his contention specifically state that the "threshold inquiry [in determining whether an agency decision should have preclusive effect] is whether the earlier proceeding is the essential equivalent of a judicial proceeding[,]" not whether the issues addressed are issues of fact or law. *Oubre, supra,* 630 A.2d at 703; *Davis, supra,* 412 A.2d at 1194. We have long recognized an agency's ability to decide questions of law, and we review such determinations with great deference when the agency is interpreting the statute that it is responsible for administering. *Smith, supra,* 548 A.2d 95, 97. The DCRA held a full hearing on Sindram's tenant petition. Evidence was presented and entered into the record. Testimony was heard and each party had the opportunity to make arguments. We see no reason to conclude that the parties in this case did not have an "adequate opportunity to litigate" their claims. Therefore, absent a showing that the DCRA was acting upon a material misconception of the law, we are satisfied that the DCRA was acting in a judicial capacity with regard to Sindram's retaliation petition. *See, e.g., Sawyer Prop. Mgmt. of Maryland, Inc. v. D.C. Rental Hous. Comm'n,* 877 A.2d 96, 102–03 (D.C. 2005) (even if a different interpretation of the law is supportable, deference to an administrative agency is appropriate so long as there is no material misconception of the law); *Madison Hotel v. District of Columbia Dep't of Employment Servs.,* 512 A.2d 303, 306 (D.C.1986) (a decision of the Department of Employment Services must not stand if it reflects a material misconception of the law); *Oubre, supra,* 630 A.2d at 702 (same). In *Madison Hotel* we relied on the Supreme Court's ruling in *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), which held "if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *Id.* at 94, 63 S.Ct. 454. "Material misconception of the law," a term which is embraced within the concept of "manifest error in the record," does not refer to an issue on which the court might merely have come to a different result if it were proceeding in the first instance, *see Oubre, supra,* 630 A.2d at 702, but rather to a misconception that is itself manifest, that is, plain, clear, and obvious. When *res judicata* or collateral estoppel principles apply, the court does not review determinations of law *de novo.* Otherwise, those principles would have no effect.

■ Sindram next contends that, to the extent that the DCRA considered and rendered a determination on the issue of whether Borger's termination of the HAP contract was legal, it did so under a mate-

rial misconception of the law of retaliation and, therefore, its ruling should not be given preclusive effect. In support of this contention, Sindram argues that the legalities of Borger's actions are not relevant in a claim of retaliation. Sindram contends that, to the contrary, if Borger had committed an act with a retaliatory motive, it does not matter whether the act was otherwise lawful or not, it is still retaliatory within the meaning of the statute. *See* D.C.Code § 42–3505.02 (2001). Relying on *De Szunyogh v. William C. Smith,* 604 A.2d 1, 4 (D.C.1992), he further argues that the language "not otherwise permitted by law" is merely a synonym for "retaliatory," and does not reflect an actual determination by the ALJ on the issue of whether Borger's termination of the HAP contract was in fact legal. We are not persuaded by this argument.

 The statute governing retaliation plainly states that retaliatory action "may include any action or proceeding not otherwise permitted by law . . ." D.C.Code § 42–3505.02 (2001). Admittedly this language is difficult to construe. *See Wahl v. Watkis,* 491 A.2d 477, 480 (D.C.1985). In *De Szunyogh* we undertook to clarify the meaning of the statute and our holding in *Wahl* by explaining that "if a tenant alleges acts which fall under the retaliatory eviction statute, [D.C.Code § 42–3505.02], the statute by definition applies, and the landlord is presumed to have taken 'an action not otherwise permitted by law' unless it can meet its burden under the statute." *De Szunyogh, supra,* 604 A.2d at 4. It also clarified that where a tenant makes the required threshold showing, the trier of fact shall presume that retaliatory action was taken unless the housing provider proves *otherwise by clear and convincing evidence. See* D.C.Code § 42–3505.02(b). The ALJ's Decision and Order issued in this case demonstrates that he recognized

the presumption in favor of the tenant but that, after a full hearing, he also determined Borger's actions to be "otherwise permitted by law" and thus not retaliatory.

Sindram argues that the determination meant "merely that the landlord had met its burden to disprove a retaliatory motive," appearing to regard it as a finding of fact regarding retaliation. The ALJ actually found, however, that "Petitioner's claim of retaliation is not applicable here and is dismissed because the alleged retaliatory action by Respondent is permitted by law."

This finding is further reflected in the ALJ's conclusion of law that petitioner Sindram "failed to prove by a preponderance of evidence that Respondent retaliated against him . . . in that the alleged retaliation action by Respondent—not to renew the Section 8 lease for Petitioner's unit—is permitted by law." The foregoing finding and conclusion of the ALJ are most reasonably read to constitute a ruling that the landlord's right to decline to renew the federal Section 8 contract prevails over inconsistent local statutes, which are effectively preempted by the federal law creating the HAP or Section 8 program. *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987).

Accordingly, we disagree with appellee's contention that the ALJ did not rule on this matter. Although he did not discuss the underlying legal principles governing termination, the specific language of the HAP contract, or federal Section 8 law, he ruled that Section 8 law permitted the landlord to end its Section 8 arrangement regarding the tenancy in question notwithstanding District of Columbia legal precedents and statutes regarding retaliation.

 We cannot agree with Sindram's contention that the ALJ's ruling evinces a material misconception of law. We recog-

nize that if this court eventually rules upon the issue of the interplay between the RHA, and related case law, *see, e.g., Edwards v. Habib,* 130 U.S.App. D.C. 126, 397 F.2d 687, 699–703 (1968), and the provisions of federal Section 8 and the HAP contract, it may well come to a result different from that reached by the ALJ. We conclude only that, given the language of the retaliation statute, related case law, the federal legislation creating the Section 8 program and federal preemption considerations, it cannot be said that there is manifest error in the administrative record arising from a material misconception of the law.[2] Having determined that the DCRA was acting in a judicial capacity, we conclude that the ALJ's rulings can have collateral estoppel effect upon the parties bound by them.

Sindram sets forth two additional arguments in support of his contention that his claim is not precluded by the decision of the ALJ in the administrative law case. First, he argues that his claim challenges the legality, under the local eviction and discrimination statutes, of Borger's termination of the HAP contract, issues he contends were not "actually litigated" before the DCRA. Second, he argues that the ALJ's determination regarding the legality of Borger's termination of the HAP contract was "not even relevant, much less 'essential,' to its judgment on the retaliation claim."

Looking first at the issue of whether Sindram's claim was "actually litigated" before the DCRA, we conclude that it was. "An issue is actually litigated when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined....'" *Ali Baba Co., Inc. v. WILCO, Inc.,* 482 A.2d 418, 422 (D.C.1984) (quoting RESTATEMENT(SECOND) OF JUDGMENTS § 27(d)). Sindram's petition to the DCRA alleged that Borger's termination of his Section 8 HAP contract was an act of retaliation for Sindram's having previously filed a complaint of housing code violations. Although the petition did not specifically challenge the legality of Borger's termination of the HAP contract under the RHA, or allege source-of-income discrimination under the DCHRA, we recognize that the term "actually litigated" is not limited to just what is plead on paper but also what is presented, considered and determined by the agency. *Id.*

In this case, what was presented and argued to the DCRA was an allegation that "[Borger's] decision not to renew the Section 8 lease for his unit was an unlawful act of retaliation directed at him in response to the hearing held in Tenant Petition 27,056 against [Borger] earlier in 2001." The following information was before the administrative agency: (1) a hearing had been held on August 4, 2001, on a tenant petition filed by Sindram alleging housing code violations against Borger; and (2) four days after that hearing Bor-

---

2. Although the parties have referred us to no appellate authority directly addressing whether an "endless lease" provision is preempted by the 1996 amendment to 42 U.S.C. § 1437f, there is a divergence of positions arising out of the trial courts of New York. *Compare Rosario, et al. v. Diagonal Realty, LLC,* 9 Misc.3d 681, 803 N.Y.S.2d 343, 2005 N.Y. Slip Op. 25267, 2005 N.Y. Misc. Lexis 1379 (N.Y.Sup.Ct., July 1, 2005) (finding that defendant landlord's refusal to renew leases with Section 8 rent subsidies violates both the letter and spirit of New York's tax abatement and rent stabilization laws), *and Kulick & Rheingold Realty, LLC v. Montero,* 8 Misc.3d 1007, 801 N.Y.S.2d 778, 2005 N.Y. Slip Op. 50974U (June 27, 2005) (finding that precluding the petitioner landlord from opting-out of the Section 8 program upon the expiration of the lease would contradict the intent and policy behind the 1996 amendment to the United States Housing Act).

ger sent its letter to DCHA notifying it of its intent to terminate its HAP contract with regard to Sindram. The ALJ correctly noted that, under the statute, Borger's actions were presumed retaliatory due to the fact that they occurred within six months of Sindram's petition to the DCRA. D.C.Code § 42–3505.02 (2001). The only way that this presumption could be overcome was by Borger's establishing that its actions were not retaliatory. One way of doing this was by showing that its actions were "otherwise permitted by law." The ALJ, in his ruling, specifically stated that his ground for finding no retaliation was that Borger's actions were "otherwise permitted by law." This conclusion necessarily required that the ALJ consider and determine whether Borger's termination of the HAP contract was legally permissible. Although the legality of Borger's actions was not plead on the papers in Sindram's petition to the DCRA, it was "actually litigated" in that Borger had to argue the legality of its actions in order to overcome the presumption in favor of Sindram. Additionally, the ALJ ultimately determined the issue of legality in order to reach his final determination that there was no retaliatory action.

 Sindram also contends that, even if the ALJ did determine the legality issue, that determination was not "essential" to the final judgment. In support of this contention he argues again that it was not the legality of Borger's termination of the HAP contract but rather Borger's motive for terminating the contract that was essential to the ALJ's determination. As we noted previously, this argument is without merit, and we find that the ALJ's determination of whether Borger's termination of the HAP contract was legal was at the very heart of his ruling, for had he not made that determination he would have been unable to conclude on the record

before him that the action was not retaliatory.

 In sum, we hold that the DCRA was acting in a judicial capacity when it heard and ruled on Sindram's petition alleging Borger's termination of his Section 8 HAP contract was retaliatory. We further hold that the issue of the legality of Borger's unilateral termination of the HAP contract was both "actually litigated" and "essential" to the judgment of the DCRA. Thus, we hold that under collateral estoppel principles the issues regarding termination of the HAP contract raised by Sindram before the Superior Court were procedurally precluded and that the trial judge erred in granting Sindram's motion for summary judgment and denying Borger's motion for partial summary judgment. We also hold that the issue of source-of-income discrimination was not "actually litigated" or "essential" to the ALJ's ruling and thus was not removed by collateral estoppel principles from consideration in the subsequent Superior Court litigation.

### III.

 Finally, we turn to Sindram's argument that Borger's actions constituted source-of-income discrimination under the DCHRA. This argument was pleaded and argued before the trial court and was rejected. The judge ruled that Sindram had failed to present sufficient evidence upon which to make that determination. In his brief here Sindram argues that even if this court found error in the trial judge's denial of Borger's motion for partial summary judgment, Borger's actions nevertheless constituted discrimination under DCHRA and thus afford an independent ground for affirmance. Although Sindram failed to cross-appeal on this issue, such an appeal was not necessary to enable Sindram to argue it as an independent ground for

affirmance. *See Edwards v. Woods,* 385 A.2d 780, 783 (D.C.1978); *Langnes v. Green,* 282 U.S. 531, 538–39, 51 S.Ct. 243, 75 L.Ed. 520 (1931) (quoting *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924)); *Hoyt R. Matise Co. v. Zurn,* 754 F.2d 560, 565 n. 5 (5th Cir.1985).

This argument, however, does not avail Sindram as the trial judge ruled correctly that the record did not justify entry of summary judgment for him on this ground. As Borger points out, his responses to discovery set forth non-retaliatory reasons for its decision not to renew the HAP contract, including material misrepresentation on Sindram's rental application, his harassment of Borger's employees, his failure to allow entry for inspection and repair, and untimely payment of rent. The record did not permit the trial judge to determine those issues as a matter of law.

Accordingly, we reverse the trial court's denial of Borger's motion for partial summary judgment and its grant of Sindram's motion for summary judgment, and remand for further proceedings on the issue of source-of-income discrimination.

*Reversed in part and remanded in part.*