*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-50

DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, PETITIONER,

V.

A & A RESTAURANT GROUP, INC., RESPONDENT.

Petition for Review of an Order
of the District of Columbia Office of Administrative Hearings
(2017-DCRA-S704166)

(Submitted October 15, 2019                          Decided July 16, 2020)

*Karl A. Racine*, Attorney General for the District of Columbia, with whom *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile,* Deputy Solicitor General, and *Jason Lederstein,* Assistant Attorney General, were on the brief, for petitioner.

Before GLICKMAN, FISHER, AND MCLEESE, *Associate Judges*.

Opinion for the Court by *Associate Judge* FISHER.

Concurring opinion by *Associate Judge* MCLEESE at page 16.

FISHER, *Associate Judge*:    The District of Columbia Department of

Consumer and Regulatory Affairs (DCRA) issued a Notice of Infraction (NOI)

fining the respondent, A & A Restaurant Group, Inc., for having conducted

business without the required license in violation of D.C. Code § 47-2851.02(a) (2015 Repl. & 2020 Supp.). After a hearing, an Administrative Law Judge (ALJ) of the District of Columbia Office of Administrative Hearings (OAH) first suspended the fine, then subsequently dismissed the NOI. Petitioner DCRA argues that the ALJ incorrectly interpreted the renewal provisions of the licensing law and that the NOI should be reinstated. We agree and remand.

## I. Background and Procedural History

The A & A Restaurant Group, Inc. (A & A) operates the "Russia House" restaurant located at 1800 Connecticut Avenue, Northwest. A & A operated the restaurant with a valid two-year basic business license (BBL) until its expiration date on December 31, 2016. Not realizing that its BBL had lapsed, A & A continued to conduct business at the Russia House without a valid license for almost six months until renewing on June 23, 2017.[1] Meanwhile, on June 12, 2017, a DCRA inspector visited the Russia House and observed that it was a "live" restaurant engaging in business without a valid license. The inspector left a letter at the premises, providing notice to the owner that he was violating licensing laws.

---

[1] A & A paid a $500 penalty to reinstate its BBL within the six-month period after the expiration date. The total paid for renewal was $1,468.

On August 10, 2017, DCRA served an NOI on A & A for a violation of D.C. Code § 47-2851.02(a), imposing a $2000 fine for engaging in unlicensed business on June 12, 2017.

On September 28, 2017, respondent appeared in front of an OAH ALJ to contest the fine. Respondent "admitted with explanation,"[2] citing its history of compliance with administrative requirements and its eventual, albeit untimely, renewal of the BBL following the violation. Respondent's representative also informed the ALJ that he "paid [a] $500 fine" when he belatedly renewed his license — a sum that the ALJ referred to as a "late fee" or "an administrative fee for late payment."

After the hearing, the ALJ requested additional information from DCRA relating to the "[s]tatutory or regulatory basis or other basis for the late fee." DCRA responded by citing D.C. Code § 47-2851.10 (2015 Repl.) (entitled "Lapsed and reinstated licenses"), which requires "the payment of a penalty of

---

[2] By entering a plea of "admit with explanation" the respondent conceded that it engaged in business without a license on June 12, 2017, but was permitted to present mitigating evidence in an effort to reduce the fine. Ultimately, the ALJ found that "it was not necessary to consider mitigating factors" because she decided not to assess a fine.

$500" before an expired license may be reinstated. *Id*. at § 47-2851.10(b)(2). Shortly thereafter, the ALJ issued her final order.

In her final order, the ALJ concluded that, "because Respondent renewed its license within six months of when it lapsed," no fine was warranted. The ALJ based this conclusion on her interpretation of D.C. Code § 47-2851.10(c)(2), which addresses applying for a new license after the old license "has been expired for at least six months." That portion of the Code states:

> A licensee whose license has been expired for at least 6 months shall be treated as a new applicant and not as an applicant for renewal, unless otherwise provided by applicable law. If the new applicant conducted business during the 6 months after the expiration date of the license without complying with the renewal procedures pursuant to this section, the applicant *shall be deemed to have conducted business without a license and shall be liable for any and all fees and fines* applicable to conducting business without a license. *Id.* § (c)(2) (emphasis added).

According to the ALJ, when read together, the above quoted subsection of the "late fee statute" (D.C. Code § 47-2851.10) and D.C. Code § 47-2851.02(a) (prohibiting engaging in business without a license), permit DCRA to impose fines for conducting business without a license in *only* two circumstances: (1) if a business has never obtained a license; or (2) if a business's license has lapsed for

six months or more. The ALJ found that because A & A renewed within the six-month window, its liability was limited to the "late fee" paid upon renewal. A & A was "not also subject to an additional fine for conducting business without a license." Accordingly, she suspended the fine.

In response, DCRA filed a motion for reconsideration in which it asserted that the ALJ "improperly constru[ed] one instance in which a person can be considered to be conducting business without a license to be the only instance where this can occur." DCRA explained that there are two *separate* statutes at play in this case. First, because there is a licensing requirement, *any* operation of a business without a license is a violation of D.C. Code § 47-2851.02(a), triggering the fines described in 16 DCMR § 3301.1(u) and 16 DCMR § 3201.1(a)(1). Second, as part of the renewal process, "DCRA is authorized by statute to charge late fees for late renewals of Basic Business Licenses." This authorization is found in D.C. Code § 47-2851.10, which "differentiates between levels of late fees and whether or not the license can be reinstated."

DCRA also addressed the supposed inconsistency — much discussed by the ALJ — between D.C. Code § 47-2851.10(b) and § 47-2851.10(c). DCRA asserted that the explicit reference to penalties for conducting business without a license

contained in § (c)(2) — when the license has been expired for at least six months and the licensee is considered a "new applicant" — serves to clarify that a "constructive new applicant" remains liable for his prior unlicensed business operations. That is, he does not begin again with a blank slate as if he were a true new applicant "who is just starting a business."

DCRA asserted that, when the statutes are read together, it has authority to levy fines for engaging in business without a license at any time *including but not limited to* when a license has been expired for more than six months. In the order denying the motion for reconsideration, the ALJ disagreed:

> [T]he explicit reference to a fine for conducting business without a license when a license has expired for more than six month[s], and the absence of such a reference to licenses lapsed for less than 6 months, indicates an the [sic] legislative intent to reserve fines for conducting business without a license to lapses greater than 6 months.

The ALJ then dismissed the NOI. DCRA has petitioned for review.[3]

---

[3] Respondent failed to comply with this court's orders to identify its counsel and to file a brief. Accordingly, we are conducting this review based on the record and the petitioner's brief alone.

## II. Analysis

### A. A Basic Business License Is Required

As a general matter, all persons engaging in business in the District of Columbia must obtain a business license. D.C. Code § 47-2851.02 (entitled "License required").[4] Although D.C. Code § 47-2851.02 does not, on its face, prescribe a penalty for violating that requirement, that does not mean that a penalty does not exist. To the contrary; the Civil Infractions Act provides for "the imposition of alternative civil sanctions for infractions of laws and regulations." D.C. Code § 2-1801.01 (2016 Repl.). And DCRA has the "authority to implement the basic business license system" by appropriate regulation. D.C. Code § 47-2851.20 (2015 Repl.). Thus, as with other licensing provisions, the penalty for violating the basic business licensing requirement is not found in the Code, but rather in regulation. *See*, *e.g.*, D.C. Code § 47-2808 (2015 Repl.) (auctioneers; penalty found in 16 DCMR § 3301.1(a)); D.C. Code § 47-2823 (2015 Repl.)

---

[4] "A person which is required under law to obtain a license issued in the form of an endorsement to engage in a business in the District of Columbia shall not engage in such business in the District of Columbia without having first obtained a basic business license and any necessary endorsements in accordance with this subchapter." D.C. Code § 47-2851.02(a).

(baseball, football, and athletic exhibitions; penalty found in 16 DCMR § 3301.1(j)); D.C. Code § 47-2839 (2015 Repl.) (private detectives; penalty found in 16 DCMR § 3301.1(t)).

The Civil Infractions Act (the Act) authorizes monetary fines to be levied at a rate determined by a schedule of fines prepared by the Mayor and approved by the Council. D.C. Code § 2-1801.04 (2016 Repl.). Under the schedule, engaging in business without a basic business license is a Class 1 infraction, 16 DCMR § 3301(u). The fine for a first offense is $2000. 16 DCMR § 3201.1(a)(1). Neither D.C. Code § 47-2851.02(a), nor the implementing regulation, 16 DCMR § 3301.1(u), makes any exception for operating without a license during the first six months after a license expires.

"In order to initiate a proceeding" under the Act, the Mayor must "serve a notice of infraction upon a respondent." D.C. Code § 2-1802.01(a) (2016 Repl.). The NOI must include a citation to the regulation alleged to have been violated as well as the amount of the fine applicable to the infraction. *Id.* § (b). To challenge an NOI, a respondent may request a hearing; the procedure for doing so must be contained in the NOI. *Id.* If an ALJ "determines that a notice of infraction is

defective on its face," she shall "enter an order dismissing the notice of infraction." *Id.* § (c).

## B. Reinstating an Expired Business License

Ordinarily, BBLs are valid until the expiration date "endorsed on th[e] basic business license," typically two or four years after the date of issue. D.C. Code § 47-2851.09(a)(1) (2015 Repl.). In order to encourage prompt renewal, the Code provides for graduated late fees and reinstatement procedures. However, after six months, licenses are no longer reinstated and the former licensee must instead confront a more cumbersome process to obtain a new license.

More specifically, a license that has not been renewed by its expiration date is "deemed to be lapsed." D.C. Code § 47-2851.10(b)(1). Nevertheless, a lapsed license renewed within 30 days of the expiration date "shall be reinstated upon the payment of a penalty of $250, *plus* all other applicable fees or penalties provided by law." *Id.* (emphasis added). A license lapsed for more than 30 days but renewed before six months have passed, "shall be reinstated upon the payment of a penalty of $500, *plus* all other applicable fees and penalties provided by law." *Id.* § (b)(2) (emphasis added). Finally, a licensee who has failed to follow renewal

procedures within six months of the expiration date will be considered a new applicant. *Id.* § (c)(2). As a new applicant, the former licensee must complete all procedural requirements and pay all fees required for a new licensee. However, the "new application for a license shall not be processed until all applicable fines and fees have been paid." *Id.* § (c)(2). Upon completion of licensing requirements, the applicant will be issued a new license number; the original license *will not* be reinstated. D.C. Code § 47-2851.03b (2015 Repl.).

### C. Section 47-2581.10 Does Not Create an Exception to the Requirement That All Businesses Maintain a Valid BBL

This court reviews questions of law — including questions of statutory interpretation — *de novo. Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). Ordinarily, we accord some deference to the expertise of the agency which is charged with enforcing a statute. However, OAH is "'vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies' and thus lacks the subject-matter expertise justifying the deference to agency interpretations of statutes or regulations." *District of Columbia Dep't of Env't v. East Capitol Exxon*, 64 A.3d 878, 881 (D.C. 2013) (quoting *Washington,* 954 A.2d at 948). We therefore

review OAH's interpretation of business license law without deference.[5] *Washington*, 954 A.2d at 948.

"We begin by looking at the plain language of the statute and, if the plain meaning is clear, we will look no further." *Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017). "[A] statutory provision is to be read, whenever possible, in harmony with other provisions to which it naturally relates." *In re L.H.*, 634 A.2d 1230, 1231 (D.C. 1993). Accordingly, it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014) (internal quotation marks omitted) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). "A statute should not be construed in such a way as to render certain provisions superfluous or insignificant." *Tuten v. United States*, 440 A.2d 1008, 1010 (D.C. 1982).

Taken together, D.C. Code § 47-2851.02 ("License required"), D.C. Code § 47-2851.10 ("Lapsed and reinstated licenses"), and 16 DCMR § 3301.1 ("Business and Professional Licensing Administration Infractions"), address two distinct but

---

[5] The petitioner argues that we should afford deference to DCRA's interpretation of the licensing statute but, because we do not find the law ambiguous, we do not reach the question of deference to DCRA.

related processes that effectuate the universal business license requirement: (1) license renewal and reinstatement, an administrative process, and (2) civil infractions for operating a business without a license, an adjudicatory process. On its face, 16 DCMR § 3301.1(u) authorizes civil penalties for *any* unlicensed business operation in violation of D.C. Code § 47-2851.02 — it does not make an exception for instances where a licensee has operated without a license but renewed within six months.

The language of the "lapsed license" statute also makes clear that these processes were intended to work concurrently. The "lapsed license" statute refers to reinstatement penalties and, generically, "all *other* applicable fees and penalties." This statute prescribes the "penalty" required to reinstate a lapsed or expired license,[6] but it does not purport to displace the separate system for adjudicating penalties incurred under 16 DCMR § 3301.1 for conducting business without a license. D.C. Code § 47-2851.10's reference to "other fees or penalties" indicates that paying the penalty required to get the license reinstated does not excuse any violations of statutes or regulations that may have occurred. And use

---

[6] Notably, there is no reference to a reinstatement penalty in § 47-2851.10 (c)(2) as reinstatement is no longer an option where a license has been expired for "at least 6 months." Instead the "new applicant" will be required to pay new applicant fees in addition to all other applicable fines and fees.

of the word "plus" clearly signals that a reinstatement penalty may be supplemented by other administrative fees and penalties as well as by penalties for violating the Code. In this case the two sums serve different purposes; the reinstatement penalty is meant to encourage prompt renewal and the violation penalty to protect the public by penalizing unlicensed operation of a business.

In her Final Order, the ALJ lost sight of the universal license requirement that is contained in D.C. Code § 47-2851.02(a) and enforced under 16 DCMR § 3301. Instead, invoking the canon of *expressio unius est exclusio alterius*, the ALJ seemed to view § (c)(2) of the lapsed license statute as the *only* source of a penalty for operating a business after a license has lapsed.

In support of her interpretation, the ALJ opined that DCRA's understanding of the statutory scheme leads to absurd results. She explained that under DCRA's interpretation, a licensee which attempts to reinstate its license would be subject to *both* a late fee and a $2000 fine for operating without a license whereas a licensee which waits at least six months is only subject to a $2000 fine.

The ALJ's logic is flawed for three reasons. First, it ignores the fact that fines for operating without a license may only be levied after an NOI has been

issued. D.C. Code § 2-1802.01(a). There is no reason to think that the scope of DCRA's authority to impose such fines would be addressed in § 47-2851.10, a statute addressing the administrative process for reinstating a license. The Code does not provide for the administrative imposition of fines (for unlicensed operation) when a licensee attempts a late renewal. Second, in concluding that the "new applicant" would pay less, the ALJ did not account for the administrative burden borne by the new applicant who — while not subject to a reinstatement penalty — must submit a basic business license application, pay the fees charged a new applicant, obtain the necessary license endorsements, undergo the required inspections, *and* — as is the case with businesses whose licenses have been reinstated under D.C. Code § 47-2851.10(b) — be liable for all applicable penalties for conducting business without a license. *Id.*; D.C. Code § 47-2851.07 (2015 Repl.) (Issuance of licenses). Finally, by ignoring the universal license requirement — and instead finding fines for unlicensed operation inapplicable if renewal occurs before the six-month mark — the ALJ judicially created a grace period forgiving unlicensed conduct that does not appear anywhere in the Code or in regulation. Contrary to the ALJ's interpretation, D.C. Code § 47-2851.10 does no such thing. Subsection (c)(2) prudently (but unnecessarily) cautions that obtaining a new license after a six-month lapse does *not* mean that the slate is

wiped clean or that the "new applicant" will be treated as if it were a brand new applicant just starting a business.

In this case, respondent renewed his license more than thirty days but less than six months after the expiration date. As a pre-condition for reinstatement, respondent was charged a $500 penalty as required by § 47-2851.10. Separately, respondent was also liable for the $2000 fine associated with the NOI for engaging in unlicensed business on June 12, 2017. The payment of a reinstatement penalty did not absolve A & A of its separate responsibility to pay the fine for the violation charged in the NOI. It is entirely consistent that the Code require petitioner to pay both an administrative penalty (or late fee) for his delay in renewal *plus* a fine for operating his business without a license. While the ALJ could have considered mitigating factors to reduce the fine, her conclusion that the fine did not apply at all was contrary to law.

## III. Conclusion

In sum, the ALJ's conclusion that respondent could not be fined for engaging in business without a license was not in accordance with law. We therefore reverse the judgment of OAH and remand with instructions to reinstate

the Notice of Infraction and conduct further proceedings not inconsistent with this opinion.

*So ordered.*

MCLEESE, *Associate Judge*, concurring in the judgment: In my view, it is unclear how the statutory provisions at issue should best be interpreted. Rather than resolve that question de novo, I would defer to the reasonable interpretation of the District of Columbia Department of Consumer and Regulatory Affairs (DCRA). DCRA's interpretation is reflected in 16 DCMR § 3301(u) (generally providing that operating business without license is civil infraction subject to fine, without providing safe harbor for businesses that operate without license for less than six months). Section 3301(u) was promulgated by DCRA after public notice and comment, and DCRA is charged with enforcing the provisions at issue. *See* 52 D.C. Reg. 4903, 4910 (2005) (promulgating section 3301(u)); D.C. Code § 47-2851.20 (2015 Repl.) (granting Director of DCRA authority to issue regulations to implement business-licensing provisions). We therefore owe deference to DCRA's interpretation. *See, e.g.*, *1303 Clifton St., LLC v. District of Columbia*, 39 A.3d 25, 31 (D.C. 2012) ("[R]egulations adopted by express delegation of authority, through notice and comment . . . warrant[] a high degree of deference.");

*see generally Borger Mgmt., Inc. v. Sindram*, 886 A.2d 52, 60 (D.C. 2005)

(deferring to DCRA).  I therefore respectfully concur only in the judgment.